## M. B. HAAS & Co. v. EDWARD FENLON.

1. APPOINTMENT TO OFFICE; *Representations, and Inducements; Agreements void.* Representations that a person could and would be appointed to a position of public trust, as an inducement to a party to make a contract, cannot be given in evidence, however false such representations may have been, or however much the party may have been injured by relying upon them. Such inducements are against public policy, and cannot be used as a ground of recovery in an action.

2. EVIDENCE—*Admissible under General Denial.* In an action to recover damages for an invoice of goods above the stipulated standard of prices, it is not error to permit the defendant, under a general denial,

38—8TH KAS.

to introduce evidence showing that certain sums had been thrown off or remitted for the purpose and with the understanding that it was done to cover such a possible result.

## *Error from Leavenworth District Court.*

THE questions in this case, and all the facts necessary to a clear understanding of the questions determined in this court, are stated in the opinion. The case was tried in the district court at the November Term 1868, before Mr. Justice BREWER, then district judge. Judgment was given in favor of the defendant *Fenlon*, and *Haas & Co.*, plaintiffs, bring the case here on error.

*Hurd & Stillings*, for plaintiffs in error:

1. The contract was not void. It was simply a contract on the part of Haas to purchase, and of Fenlon to sell, in case Haas was appointed sutler. It was not a contract to obtain the appointment, nor for the services of Fenlon in obtaining the appointment. There was nothing stipulated in the contract that was contrary to law or public policy. The reliance of Haas upon the representations of Fenlon as to the sufficiency of the appointment of Haas as sutler cannot be held to have been a mistake of Haas on a question of law. The appointment of sutler was to be made under regulations established by the Secretary of War; and these regulations are not *law* in the sense that that term is generally used. Any ignorance or mistake in reference to them is mistake or ignorance of fact and not of law: Broom's Legal Maxims, 192, 202; 3 Russ., 565; 5 Vesey, 291; 3 Shepley, (Me.) 45; 9 Pick., 112.

2. The ground upon which the evidence was excluded was novel and unprecedented—entirely unknown in practice, and erroneous. If evidence is competent or material under the issues raised by the pleadings it cannot be excluded on the ground that it does not tend to prove any cause of action for which the plaintiffs can recover. This would be disposing of the case piecemeal—excluding evidence under separate allegations in the same causes of action, and not testing the suffi-

ciency of the whole together: 8 Ohio St., 293; 12 id., 60; 14 id., 200; 13 B. Mon., 206; Tidd's Pr., 862.

3. The answer of the defendant being simply a general denial, no evidence could properly be received in reduction of damages, or to establish an accord and satisfaction, a payment, release, or set-off; nor could the jury be properly permitted to consider any such evidence. Under the code a defendant is required in all cases to plead any new matter constituting either an entire or partial defense, and cannot give such matter in evidence in reduction of damages when not set up in the answer: 16 N. Y., 297; 20 Barb., 468; 38 id., 413; 5 Duer, 392; 16 Abb. Pr., 235; Swan's Pl., 246.

*Clough & Wheat*, for defendant in error:

1. The contract was void on its face, and that the courts will leave the parties thereto, as to all transactions growing out of it, or connected therewith, where it finds them: 32 Vt., 546, 721; 8 Term R., 89; 2 Wallace, 45; 4 Peters, 184; 4 Comst., 449; Chitty Contr., 742, 788; 2 Kent's Com., 609, note 1; 18 Pick., 472; 4 Barn. & Cress., 319; 2 McLean, 276.

As Haas could have been removed from the office of postsutler at any time, even if he had been appointed, therefore any damage resulting from non-appointment is too remote: 34 Barb., 333.

2. The plaintiffs' claim for damages, other than those about cost, etc., is predicated on the alleged fraudulent representations of defendant as to the legal effect of the order of Lieut. Col. Sykes. That paper was perfectly plain and easily understood, and there could be no sort of excuse for misunderstanding it. An action for fraud is not maintainable when the fact is open to inspection and knowledge of plaintiffs: 23 Pick., 256; 5 Blackf., 18; 2 East, 469; 9 Minn., 89; Chitty Contr., 751; Broom's L. Max., 609.

3. Even if plaintiffs had been entitled to rescind the contract because of the alleged fraud, if they had elected to have done so in time, still they would have been required to place the defendant in the same situation as he occupied at the time of

making the contract, before they could maintain a suit for the consideration by them paid or given: 5 Metc., 457; 1 Vroom, 320; 15 Pick., 352; 5 East, 452; 24 Ind., 340; 13 Iowa, 1; 12 Ill., 338. A party having an election to rescind a contract must rescind it wholly, or in no part; he cannot consider it void to reclaim his property, or the value thereof,.and at the same time in force for the purpose of recovering thereon: Chitty Contr., 640, note 2; 14 Maine, 364; 5 Hill, 391; 5 East, 449; 15 Mass., 319; 24 Ind., 339; 23 Pick., 283.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 27th of March, 1866, Fenlon and M. B. Haas entered into a written agreement, that if the said Haas could procure the appointment of post-sutler at Fort Leavenworth Fenlon was to sell him all his stock in trade and goods of every description, in the building occupied by Fenlon as sutler at Fort Leavenworth, at the cost-price thereof, to be ascertained by the invoices of Fenlon, and also to sell him his buildings occupied as sutler's store, and his dwelling-house at Fort Leavenworth, at a price to be agreed upon by the parties, and if they could not agree on the price of the buildings, it was to be fixed by arbitrators. For this property Haas agreed to pay in cash and in indorsed notes—the cash to be deposited on the morning of the 28th of March 1866. In case Haas was not appointed sutler the agreement was to be void. On the 31st of March this executory contract, which was entered into by Haas for Haas & Co., was carried out; the goods and buildings were invoiced, and the sum of $18,000 in cash was paid, and notes given for the residue. On the 30th of March Fenlon delivered to Haas a paper of which the following is a copy:

HEAD-QUARTERS, FORT LEAVENWORTH, KANSAS,
March 30th, 1866.
SPECIAL ORDERS No. 51. *Extract.*

I. Mr. E. Fenlon having tendered his resignation as post sutler, it is hereby accepted to take effect this date.

II. The sutlership of the post having become vacant, upon

the recommendation of the council of administration Mr. M. B. Haas, of Leavenworth City, is appointed sutler, subject to the approval of the Secretary of War.

By order of Lieut. Colonel Geo. Sykes

CHAS. S. NEWLON, 1st Lieut. 13th Infty., Post Adjutant.
*A true copy:*

CHAS. S. NEWLON, 1st Lieut. 13th Infty., Post Adjt.

In "ten or twelve days" after Haas had taken possession of the goods and buildings he was turned out of possession of the buildings at Fort Leavenworth, having been ordered off by the authorities. And this action is brought to recover $25,000 damages sustained by the plaintiffs for the false representations made by Fenlon to induce plaintiffs to make the contract above stated, and for false invoices on the stock of goods. The petition in form states but one cause of action. The false representations of Fenlon as to the appointment of Haas as sutler, and the false invoices, are all interwoven with each other, and with many other statements, as parts of transactions growing out of the contract of the 27th of March, and from all of which damage to plaintiffs arose. Among other statements this is found: "And the defendant further contriving and intending to cheat and defraud the plaintiffs, and to induce them to purchase the said stock in trade, goods, and buildings of and from the defendant, he the defendant then and there falsely and fraudulently represented to the plaintiffs that he was the post-sutler at Fort Leavenworth aforesaid, and that he was the lawful owner of the said stock in trade, goods, and buildings, and had a good and lawful right to sell and convey the same to the plaintiffs; that his only object in making said sale was that he intended to take a trip to Europe for the benefit of the health of his wife and family, and that M. B. Haas, one of the plaintiffs could and would procure the appointment of post-sutler at Fort Leavenworth aforesaid." On these representations the petition represents that the contract of March 27th was made. This contract was made part of the petition. The substance of it has been already stated. Upon the presentation of the order of the post commander heretofore noticed the contract was concluded. Haas states in his testimony that the presentation of

this order was accompanied by representations of Fenlon that it was all the appointment he needed.

Upon the trial the defendant objected to all evidence tending to show false representations by Fenlon as to the appointment of Haas to the place of sutler as an inducement for plaintiffs to purchase the stock of goods, buildings, etc., and all evidence intended to show damages to plaintiffs by reason of Haas not retaining the position, or not receiving the appointment, and representations made by Fenlon to Haas that the appointment made by the commander at the fort was all the appointment that was required. The court sustained the objections, and this ruling in a great number of instances is complained of in this court as error. The court also in its charge confined the jury to an inquiry as to the damages arising from the invoicing of the goods at a higher price than the cost thereof. In these rulings we think the court was correct. The evidence did not tend to prove any cause of action for which the plaintiffs could recover in this case, or in any case. Any evidence that tended to show that Fenlon undertook to procure or aid in procuring the appointment of Haas to the place of sutler as an inducement to the plaintiffs to buy of defendants, and any representations made by Fenlon of his power to influence such an appointment, or secure its enjoyment by Haas, or in any way promote or effect such a result, however much confidence the plaintiffs may have had therein and relied upon in making such purchase, could not be the basis of a recovery. No matter how false the representations might have been, nor how much the plaintiffs were damaged by confiding in such representations or promises, they cannot recover for the injury. All contracts that embrace stipulations, or are based upon an understanding, that one party is to exert his influence upon the appointment of a public officer, or upon the decision of questions affecting public rights, with a view to other considerations therefor than the public good, are contrary to public policy, and so inoperative and void: *Fuller v. Dame,* 18 Pickering, 472; *Bartle v. Nutt,* 4 Peters, 184; *Gray v. Hook,* 4 N. Y., 449; *Nichols v. Mudgett,* 32 Vermont, 546; *Meacham v. Dow,*

id., 721; *Tool Co. v. Norris*, 2 Wallace, 45.  Mr. Fenlon had an undoubted right to use his influence to procure the appointment of sutler for Mr. Haas; but he had no right to urge such an appointment from any other motive than the public good. He had no right to accept, nor Messrs. Haas to offer, any. inducement to use his influence in the appointment, because such consideration placed Mr. Fenlon under wrong influences, and offered him a temptation to do that which might injuriously affect the public interest.  Nor is the character of the transaction in any way changed because the inducement was an advantageous contract instead of money.  Either comes within the rule, and is equally obnoxious.  While the law will not hear the parties to such a contract, neither can it entertain causes of action embracing negotiations leading to such a contract, as representations falsely made to bring it about.  The law leaves the parties to such a transaction where it found them, and will not attempt to adjust the rights between them. If one party has suffered by the bad faith of another in such a case he has no redress in the courts.  It is precisely such a prohibited contract that, so far as the sutlership was an inducement thereto, was the moving cause of the representations the injurious falsity of which is one of the grounds of action in this case, and to establish which the rejected testimony was offered.  It is true that the questions were skillfully framed so as to avoid as far as possible the objection on this ground; and some of them taken singly may not be open to this objection; but such questions were not relevant to the only issue that could be tried, and if not obnoxious on the ground that they were intended to elicit proof of an illegal contract, or representations that led to one, still that were properly excluded as not pertinent to any other issue.  This conclusion disposes of the main point in the case.

Other errors are alleged, only one of which we deem it necessary to notice.  The answer, except as to the execution of the written contract, was a general denial.  The defendant under this answer was permitted to introduce evidence tending to prove that at the time the purchase was completed $300 or

$400 of the purchase money was "thrown off" the cost prices of the goods by Fenlon, and that afterwards $3,000 of one of the notes given by Haas & Co. for the goods was also remitted by Fenlon. There was evidence to show for what purpose this was done, and although it was uncertain, it was enough for the jury to infer that the first sum, and possibly the last, was thrown off to cover mistakes generally in the invoice. It is conceded that this evidence was not admissible to prove an accord and satisfaction, a payment, or set-off, or a counter-claim; but it was certainly admissible so far as it was shown that the sums were thrown off or remitted to cover any mistakes in the invoice, and that such was the purpose for which it was done, by an understanding of the parties at the time. Supposing it had been established that the amount of the cost as footed up was $200 too much: could not the defendant show under a general denial that $300 had been deducted from the amount by an understanding that it was to cover such a result? Such testimony only showed what the goods really sold for, and was in no legal sense a set-off. And to this extent the evidence was admissible, and to this point and this only was it carefully confined by the instructions of the court. The judgment is affirmed.

VALENTINE, J., concurring.