CORNISH and ALDRICH, JJ., not sitting.

WILLIS L. HAND, APPELLANT, v. WILLARD F. BAILEY COMPANY ET AL., APPELLEES.

FILED APRIL 19, 1919. No. 20359.

1. Public offices are not subjects of lawful barter and sale.

2. Libel: CHARGE OF BARTERING A PUBLIC OFFICE. Under the common law of the United States and the public policy of Nebraska, two rival candidates for a public office cannot lawfully make a contract or a political deal that one of them shall withdraw his candidacy in favor of the other and that the latter, if elected, shall appoint the former to a public office; and a newspaper article naming a candidate and charging him with being a party to such conduct is of itself libelous.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*Fred A. Nye* and *John A. Miller,* for appellant.

*N. P. McDonald* and *E. B. McDermott, contra.*

ROSE, J.

This is an action to recover $7,500 in damages for libel. The article on which the suit is based was published by defendants in the Kearney Times, a daily

newspaper, on the morning of a city election. At the preceding primary plaintiff, M. N. Troupe, K. R. Andrews, and Frank Arbuckle, among others, had been nominated for city councilmen, and their names appeared on the official ballots as candidates at the city election. Troupe, Andrews, and Arbuckle had led the others at the primary, and in the newspaper comment they are called the "Three Highest Candidates." The published article is here reproduced:

"Hand Out of Race: Is Promised Appointment.

"Candidate for Commission Attempts to Throw Support
to 'Three Highest Candidates' With Assurance
of Reward.

"Discouraged by the fact that he had found it only too evident that he could not be elected as one of the city commissioners, Willis L. Hand yesterday withdrew from the race for councilman, and according to one of his friends he did it after an agreement that he would be given an appointment if the Andrews-Troupe combination was elected.

"According to this friend of Mr. Hand's, it was thought by Mr. Andrews and Mr. Troupe that a withdrawal of the candidate would mean extra support to the Andrews-Troupe contingent. This friend was strong in his belief that the public could not blame Mr. Hand for renouncing his candidacy when he would have run a forlorn race on the one hand and could be rewarded on the other provided these men were elected.

"So evident is the alarm of the two retrogressive candidates, because of the eleventh-hour certainty of the success of the Arbuckle, Burroughs, Hawley ticket, running on a program of progress, that they maneuvered the Hand withdrawal in a last desperate effort to save themselves."

The trial court sustained a demurrer to the petition, and from a judgment of dismissal plaintiff has appealed.

Plaintiff takes the position that defendants charged him with making an unlawful pre-election contract to sell his candidacy and political influence to rival candidates for their promise to appoint him, in the event of their election, to a lucrative public office, and that the imputation is of itself libelous.

To justify the sustaining of the demurrer, defendants argue that the newspaper publication is not libelous *per se,* that special damages are not pleaded in the petition, and that therefore the facts therein pleaded do not state a cause of action.

What did the reading public generally understand the publication to mean as it appeared in the daily press on the morning of the city election? The import of the article is plain. Under the circumstances it would generally be understood by those who read it to mean that plaintiff, while a candidate for councilman, had entered into a pre-election contract to sell his candidacy and influence to rival candidates in consideration of an agreement on their part, if elected, to appoint him to a lucrative public office. In other words, the newspaper article would generally be understood in common parlance to contain the charge that plaintiff as a candidate for councilman had sold out to rivals. In any event, the political deal described by defendants includes the making of a pre-election contract to influence the appointment to a public office. Was the conduct imputed to plaintiff unlawful? The rivals with whom he is said to have bargained had not been elected. They were not then clothed with official power or responsibility for municipal acts. They were not bound by an oath of office or an official bond; but, according to the published accusation, they had nevertheless agreed in advance to exercise official power for personal advantage by appointing plaintiff to a public office, thus closing the door to other aspirants and destroying the political right of citizens generally to voluntarily recommend official appointments in the interests of the public ser-

vice. It is unnecessary to search for a statute forbidding the odious conduct imputed to plaintiff. Such conduct is denounced as unlawful by the common law of the United States and by the public policy of Nebraska. Purity of public elections and untrammeled officialdom are imperative demands of the government. Public offices are not subjects of lawful barter and sale. All contracts tending to influence appointments to public office are unlawful and void. *Exchange Nat. Bank v. Henderson,* 139 Ga. 260, 51 L. R. A. n. s. 549, note 2; *Meacham v. Dow,* 32 Vt. 721; *Filson's Trustees v. Himes,* 5 Pa. St. 452; *Eddy v. Capron,* 4 R. I. 394; *Haas & Co. v. Fenlon,* 8 Kan. 601; 9 R. C. L. 1177, sec. 164. The charge that a candidate for a public office sold out to his rival is of itself actionable. *Post Publishing Co. v. Hallam,* 59 Fed. 530.

In this view of the law, the newspaper publication pleaded in the petition is of itself libelous. The demurrer, therefore, was erroneously sustained. It follows that the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

CORNISH, J., not sitting.