ADAM BARTLE *vs.* WILLIAM D. NUTT, ADMINISTRATOR OF GEORGE
COLEMAN.

A contract was made for rebuilding fort Washington, by M. a public agent,
and a deputy quartermaster general, with B.; in the profits of which M. was
to participate. False measures of the work were attempted to be imposed on
the government, the success of which was prevented by the vigilance of the
accounting officers of the treasury. A bill was filed to compel an alleged part-
ner in the contract to account for and pay to one of the partners in the trans-
action, one half of the loss sustained in the execution of the contract.
Held that, to state such a case is to decide it. Public morals, public justice,
and the well established principles of all judicial tribunals, alike forbid the in-
terposition of courts of justice to lend their aid to purposes like this. To
enforce a contract which began with the corruption of a public officer, and
progressed in the practice of known wilful deception in its execution, can
never be approved or sanctioned by any court.
The law leaves the parties to such a contract as it found them. If either has
sustained a loss by the bad faith of a particeps criminis, it is but a just infliction
for premeditated and deeply practised fraud. He must not expect that a judi-
cial tribunal will degrade itself, by an exertion of its powers to shift the loss
from one to the other, or to equalise the benefits or burthens which may have
resulted from the violation of every principle of morals and of law.

THIS was an appeal from the circuit court of the county
of Alexandria, in the district of Columbia. The appellant
was complainant in that court.

The case was argued by Mr Swann and Mr Jones for the
appellant, and by Mr Taylor for the appellee:

Mr Justice BALDWIN delivered the opinion of the Cou...

This suit was brought on the chancery side of the circuit
court of the district of Columbia for the county of Alexandria,
by the appellant (complainant) against the appellee (re-
spondent). The object professed is to obtain a settlement of
accounts arising out of a partnership charged to have existed
between the complainant and respondent and one Ferdinand
Marsteller.

The bill charges, that in 1814, a contract was entered into
between the complainant and the government of the United
States for rebuilding fort Washington.

[Bartle *vs.* Coleman.]

That when the contract was made, it was agreed between the respondent, Ferdinand Marsteller, and the complainant, that they should share the profits of the contract—that is, that each of them should receive one third part of the profits. That the respondent was to furnish the concern with such merchandize as might be necessary, disburse the funds of the concern, and keep the accounts relative to such disbursements; that the complainant was to superintend the work, and Marsteller to drawing and furnishing the money for carrying it on.

The bill charges that under this arrangement the work was commenced and finished, and that on its measurement it was supposed a profit had been made of about four thousand five hundred dollars; and that accordingly one thousand five hundred dollars were advanced to the respondent as his share of the profits.

That, about the close of the business, it was discovered that Marsteller had committed great frauds on the government; and that the complainant gave information of these frauds to the department of war, in consequence of which Marsteller was disgraced, and soon after died insolvent.

That, soon after this development, the respondent instituted suit against the complainant for a balance claimed on his store account, and for money disbursed by him for complainant. That the complainant instituted a cross action against the respondent; and both suits were, by mutual consent, referred to arbitrators.

That when the reference was made, the complainant expected that the arbitrators would go into a full examination of the partnership accounts in relation to the government contract, as well as in relation to the individual accounts of the parties. But that when the arbitrators proceeded to act, they declined looking on the transaction as a partnership one, and thought themselves bound to consider the accounts as unconnected with that concern; and finally awarded against the complainant four thousand four hundred and ninety-seven dollars and forty-two cents, in which was included an allowance of one thousand five hundred dollars for Coleman's share of the profits of the contract, and one

thousand five hundred and thirty-four dollars for commissions in disbursing the money received from the government.

That the copartnership has been always indebted to the complainant on account of the contract with government.

The bill then proceeds to some details respecting the accounts, at this time not important, and prays for an account. and general relief.

The answer admits that the complainant in 1814 entered into a contract with Ferdinand Marsteller, agent for the United States, for the rebuilding of fort Washington; with the terms and conditions of which contract the respondent had no concern.

That it being necessary to have an agent in Alexandria to procure supplies for carrying the contract into effect, and as Marsteller had expressed a wish that the money should be disbursed through the agency of the respondent, and that the respondent should keep the accounts between Marsteller and the complainant; the latter agreed that the respondent should act as agent, and in the first instance offered him as a compensation, a share of the profits, and the complainant afterwards offered him a commission of five per cent. on the disbursements. That the respondent accepted of the latter offer, and under it entered on the agency, after having refused the first.

The respondent denies that he was in any shape interested as a copartner with the complainant and Marsteller, or with either of them, in relation to the said contract, or that he ever received any share of the profits; but admits the charge of a commission of five per cent. on the money disbursed by him.

He admits that the complainant having refused to pay the balance due from him to the respondent on private account, he did institute suit against him. That a cross suit was brought by the complainant against the respondent. That both suits were referred to arbitrators, who awarded in the respondent's favour the sum of four thousand four hundred and ninety-seven dollars and forty-two cents. That on the investigation before the arbitrators, the complainant set up as an offset the same claim which he prosecutes in this suit, and that it was rejected as unsupported by evidence.

[Bartle vs. Coleman.]

The respondent relies on that award, and the judgment on it, as a bar to further proceedings.

The cause came on to be heard on the bill and answer, and after various proceedings, not necessary to notice, the bill was dismissed without costs; the court being of opinion that the partnership charged was contrary to public policy and sound morals, and that a court of equity ought not to lend its aid to either of the parties against the other.

Among the exhibits in the cause was the contract between the complainant and the government, dated 17th September 1814, signed and sealed by complainant, and witnessed by Thomas Lowe.

" Accepted for the United States by order of colonel Monroe, secretary of war. September 30th, 1814.

F. MARSTELLER,

*Deputy quartermaster general.*

The proposition for this contract was addressed by Bartle to Marsteller in writing, and the contract was signed on the same day.

From the evidence taken in the case, it clearly appears that Marsteller acted as the agent of the United States in making the contract. That the materials furnished, and the labour performed, were under the direction of Bartle. That the money was principally received from the government by Marsteller, paid over by him to Coleman, who dispersed it on the orders of Bartle. There can be no doubt that Bartle and Marsteller were partners in the profits of the contract; but the capacity in which Coleman acted does not seem to be so certain. There is very strong evidence of his being a partner; but it is not very material whether he was an agent or a party in a contract made and carried into effect under the circumstances which attended this. The shades of difference which would in either event distinguish the moral or legal aspect of the cause, are too slight to engage the attention of the court.

By the account of the complainant against the firm of Marsteller, Coleman and Bartle, it appears that his charges amount to fifty-eight thousand three hundred and seventy-four dollars; and that there is a loss to the concern of ten

thousand five hundred and thirty-eight dollars, one half of which he charges to Coleman; and he seeks to recover this by deducting the amount from a judgment obtained against him by Coleman, in the circuit court, affirmed here on a writ of error.

Of the alleged loss on this contract, the sum of eight thousand eight hundred and sixty dollars is thus accounted for in the complainant's account against the firm.

"To deductions made by the government (which are against the operative mechanic) from the work and materials. Vide Abstracts, B. F. Eight thousand eight hundred and sixty dollars of this sum." Of this sum it appears by abstract B. that three thousand one hundred and ninety-eight dollars were for an overcharge of fifty cents per perch of stone, and fifty cents per thousand of bricks, beyond the contract price; and by abstract F., that five thousand six hundred and sixty-one dollars were for over measurement of stone, brick and carpenter work; so that deducting these two items from the amount of the loss on the contract, it is reduced to one thousand six hundred and seventy-eight dollars.

The case then presented for the consideration of the circuit court, and now before us for revision, is this: a contract made by the complainant with a public agent, a deputy quartermaster general, to an amount exceeding fifty thousand dollars, in the profits of which he was to participate; false measures attempted to be imposed on the government; the fraud discovered by the vigilance of its accounting officers; and a bill in equity filed to compel an alleged partner to account for, and pay to one of the parties in such a transaction, the one half of a loss sustained by an unsuccessful attempt to impose spurious vouchers on the government.

To state such a case is to decide it. Public morals, public justice, and the well established principles of all judicial tribunals, alike forbid the interposition of courts of justice to lend their aid to purposes like this. To enforce a contract which began with the corruption of a public officer, and progressed in the practice of known and wilful deception in its execution, can never be consummated or sanctioned by any court.

[Bartle *vs.* Coleman.]

The law leaves the p ties to such a contract as it found them. If either has sustained a loss by the bad faith of a particeps criminis, it is but a just infliction for premeditated and deeply practised fraud ; which, when detected, deprives him of anticipated profits, or subjects him to unexpected losses. He must not expect that a judicial tribunal will degrade itself by an exertion of its powers, by shifting the loss from the one to the other; or to equalise the benefits or burthens which may have resulted by the violation of every principle of morals and of laws.

· This court is unanimously of opinion, that the circuit court were right in dismissing the complainant's bill. and affirms their decree with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel ; on consideration whereof, it is ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.