Mr. Justice DAVIS.
 

 Tbis is a bill in equity filed in tbe Circuit Court of tbe United States for tbe District of Maryland by the appellants against tbe appellee, who interposed a demurrer, which was sustained by tbe Court below, and an appeal was taken to tbis Court.
 

 Tbe bill states substantially, that tbe complainant, John Randall, Jr., was on the 6th of April, 1854, largely indebted to the defendant, to secure which indebtedness both of tbe complainants executed a mortgage on lands in Cecil County, Maryland, which lands were held in trust for tbe complainant Letitia’s benefit for life. That soon after tbe mortgage matured tbe defendant filed his bill in tbe Cecil County Circuit Court for foreclosure and sale; and, on answer filed, a decree was passed on the 15th of October, 1855, for tbe sale of tbe mortgaged lands, time being given until 9th of October, 1856, to bring tbe money into Court. That in April, 1856, in order to defeat an attempt (charged to be fraudulent) by other parties to obtain possession of part of ■ tbe lands mortgaged, it was agreed that tbe defendant with tbe assent of tbe complainants should petition tbe Court for an immediate sale, which was done, and tbe time for sale changed, and a friendly arrangement was .made with tbe defendant that be was to buy the property ostensibly for himself, but was really to bold it in security for tbe decreed indebtedness, upon tbe satisfaction of which tbe purchase was to enure to tbe benefit of tbe complainant Letitia. That tbe sale took place on ,14th October, 1856, and tbe defendant was tbe purchaser, (the “ friendly arrangement” continuing,) and that tbe property sold for less than its value on account of tbe general understanding that tbe sale was merely a formal one and not meant to divest tbe estate of tbe complainants. That tbe sale was ratified with ■
 
 *587
 
 out objection from tbe complainants, under tbe assurance from tbe defendant that tbe property should, notwithstanding .the ratification, stand as a security for the amount decreed, which was to be paid by instalments. That to perfect the, form of sale, and to make it conform to the ostensible, title of the purchaser, the complainants rented the property of ,the defendant. That having obtained an apparent title, the defendant has fraudulently determined to act as if he was the real owner, and is claiming the right to sell, and . that through -.threats he extorted an agreement from the complainants, which was framed and meant to involve them in the recognition of his title. That the defendant, in furtherance of his object to oppress, has, by legal though irregular process, through the Sheriff of Cecil County, dispossessed the complainants.
 

 The prayer of the bill is to restrain the defendants from disposing of the lands, and for the sale of so much of said lands as may be necessary to pay off the defendant according to the understanding prior to the purchase, and that the residue of the lands be conveyed to Mrs. Randall. There is also a prayer for general relief.
 

 There are two questions presented by this record:
 

 1. Upon the facts stated in this bill, are the complainants entitled in equity to the relief prayed for ?
 

 2. Has this Court jurisdiction?
 

 The statements of this bill are vague and uncertain, frequently argumentative, and very rarely plain and direct. The whole bill lacks definitiveness. Agreements, friendly arrangements understandings, and fraudulent devices are freely spoken of, but the character of the agreements and the nature of the devices we do not learn. The bill seeks to establish a trust for the benefit of Mrs. Randall, growing out of certain proceedings, in the Circuit Court .of Cecil County, Maryland Are the complainants in a situation to enforce the trust; if one is established? We think not.
 

 • The following allegations contain the charges relied on in the bill to establish the trust:
 

 “And your orator and oratrix state- and charge, that auout
 
 *588
 
 April, in the year 1856, in consequence of a fraud beiiig attempted against your complainants, through devices involving the possession of part of the land mortgaged as aforesaid, it was deemed proper for counteracting, said fraud, that, on a petition ■ to befiled by said Howard in the case of said decree, your complainants should assent to a sale, (under friendly arrangements betwéen said Howard, and then rendering- such sale merely formal and nominal,) taking place forthwith, instead of being deferred to the period (the next October) provided-by the decree.
 

 And your, complainants aver, that under their answer to such petition, which was filed, the time for the sale was by decree thus changed, and under the friendly arrangement and understanding aforesaid, and which was to the effect that said Howard was to become purchaser of said mortgaged - property at a sale . under the decree, bút really to only hold it for securing the payment of the mortgage and decreed indebtment as aforesaid, upon satisfying- which .'the property it was understood should .enure, as provided by the terms of the said trust, for the benefit of your oratrix.”
 

 These allegations, stripped of their indefiniteness and vague- . ness, mean simply this, that the parties to this bill, in order to counteract a claim set up by other parties for a portion of the mortgage lands, combined together, through the aid of the Court, to shorten the time of sale, and to cover up the real ownership of the property.
 

 A fraudulent agreement was entered into to defeat, as is-charged, “ a fraud attempted'against the complainants.” If the claim set up was a fraud on the rights of. the complainants, does that consideration change the character of the agreement which was made to defeat that fraud? Manifestly not. The whole complaint of the bill is that the defendant will not execute the ". agreement thus fraudulently made, and the object of the bill is . to compel him to do it.
 

 A Court of -Equity will not- intervene to give relief to either party from the consequences of such an agreement. The maxim
 
 “ in pari delicto potior est conditio
 
 defendentis” must prevail.
 

 It is against the policy of the law to enable either party, in
 
 *589
 
 controversies between themselves, to enforce an agreement in fraud of the law, or which was made to injure another. Story’s Equity, vol. 1, sec. 298 ;
 
 Balt.
 
 vs.
 
 Rogers,
 
 (2 Paige, 156);
 
 Wilson
 
 vs.
 
 Watts.,
 
 (9 Gill, 356).
 

 , There are several other grounds decisive against the relief prayed for. We. will, however, notice but one other. There is no averment in the bill that- the defendant ever agreed in writing to hold the lands in trust for Mrs. Bandall. In fact it is manifest from the whole bill that- the agreement was a mere matter of conversation between the .parties, and that no memorandum in writing was ever made. Inasmuch as it concerns an interest in lands, and is in' parol, it is void'by the Statute of Frauds, and appearing as'it does on the face of the bill; the defence of the' Statute of Frauds may be taken advantage of- on demurrer.
 
 Walker et al.
 
 vs.
 
 Locke et al.,
 
 (7 Cushing, 90).
 

 2.
 
 Has this .Court jurisdiction. A conflict of jurisdiction is always to be avoided. Mr. Justice Grier, in
 
 Peck
 
 vs.
 
 Jenness,
 
 (7 Howard, 624), says: “That it is a doctrine of law too long established to require a citation of authorities, that where a Court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding on every other Court.
 

 ' “ These rules have their foundation not .merely in comity, but-on necessity. For if one may enjoin the other may retort by injunction, and thus the parties be without remedy, being liable to a process .for contempt in one if they dare to 'proceed in the other.”
 

 The bill in this case brings in review various’ matters passed on in the progress of a suit- by the Cecil County Circuit Court, a Court of general jurisdiction having complete control of the parties and of the subject matter of controversy.
 

 It seeks to annul a sale of lands- made by virtue of a decree of the Cecil Court, sitting as a Court of Equity in a. cause depending between these same parties; to affect the distribution of the proceeds of the sale; to enjoin the defendant from making any disposition of the lands purchased by him; to disturb hih
 
 *590
 
 possession; to invalidate his title, and to have the mortgaged property resold.
 

 This is a direct and positive interference with the rightful authority of the State Court.
 

 If there was error in the proceedings of the Court, a review can be had in the appellate tribunals of the State. If, as is charged, the decree is sought to be perverted and made the medium of consummating a wrong, then the Court, on petition or suppletal bill, can prevent it. If, as appears by the proceed ings, the surplus'money arising from the s^le is still undisposed of, then the whole case is under the control of the Court, and no suppletal even is needed to prevent the wrong.
 

 The decree dismissing the bill is affirmed.