InsiiET, J.
The present action grows out of the following agreement, entered into in Mississippi, on the 27th March, 1863, between the parties to this suit: • .
“ Whereas, James Gonegal has this day entered into a contract with John J. Pettus, Governor of the State of Mississippi, whereby the said Gonegal agreed to exchange fifty thousand sacks of salt for cotton ; and whereas the said James H. Bowman and the said Gonegal have agreed to become partners in the said contract; and, whereas, the said Bowman has advanced five thousand dollars in cash, to be used as capital in carrying the said contract into effect; now, in consideration of the premises, it is agreed that the said Bowman becomes an equal partner with the said Gonegal, with said John J. Pettus, governor as aforesaid, and all profits and losses arising from said contract are to be shared and divided equally between the’said Bowman and the said Gonegal,.and if any other goods of any kind are brought from New Orleans by the said Gonegal, the said Bowman and Gonegal are to become equal partners in the same, and share equally all profits and losses arising therefrom.”
And the present suit is to recover back from the defendant the five thousand dollars in cash, which was, by the agreement, to have been, but was not, used by the defendant to carry out the same.
The answer of the defendant admits the receipt of the nominal amount claimed under the agreement, but avers that the said sum was advanced by the plaintiff in the currency of the so-called Confederate States, and that he was prevented from using it on account of the unexpected situation of military affairs, and the change in the lines of the armies of the United States and so-called Confederate States, and he makes a tender of the amount in the same species of paper.
There was judgment in the Court below for tfie defendant, and the plaintiff has appealed.
It is urged in this Court by the appellee, that the cause of the agreement was unlawful and against good morals and:public order; but it is contended on the other side, that the question of illegality, in the consideration or object of a written contract, is properly raised in only one of two modes: 1st. Where the contract, on Us face, admits of no other com struetion but an illegal one. 2d. Where the contract is prima facie legal, and the defendant brings up the question by pleading and proving the illegality.
It has been repeatedly held by this Court, that it will not lend its aid to settle disputes relative to contracts reprobated by law. It will notice their illegality ex officio, and allow it to be suggested without any plea, and at any stage of the proceedings. 2 Hen. p. 1007, g 1. When it appears clearly that the agreement is for an illegal purpose the Court will dismiss the parties; but this is in the interest of public justice, and not of the party who seeks to profit by the acts of his adversary, of which he has been the participant. 6 An. 317.
The question then is, whether the contracts between the Governor of Mississippi and the defendant, and between the plaintiff and the defendant, on which the plaintiff’s action is based, read in connection with the momentous events that were in progress at the time the contracts were executed, and which we notice judicially are stamped with illegality—if *332 so, the plaintiff’s action must be dismissed. “Ubi dantis et aeceptantiá tuípitudo yersatur non posse repeto decimus.”
The object of the war then waged was oh the part of one of the belligerents to sever the Union, and to destroy the government of the United States, and any contract that tended to aid in the consummation of that object was in direct violation of law, and it was manifestly with the interest of promoting this object that the contracts referred to were entered into. They were agreements to supply enemies of the United States, whilst a state of war was existing—with a large quantity of salt and other goods, of any kind, to be transported from New Orleans into the lines of the Confederate (so-called) army.
There is nothing redeeming on the face of the contract referred to. It is in view of the then existing state of things, stamped with illegality, and nothing appears in the record to efface the taint with which it is imbued. It is not even shown that the plaintiff voluntarily abandoned the speculation.
In Brooms’ Legal Maxims, marginal paging, 643, a case is put which seems to have a practical bearing on the position which the plaintiff occupies in this suit. It is this : “ If A agrees to give B money for doing an illegal act, B cannot, although he do the act, recover the money by an action; yet, if the money be paid, A cannot recover it back. So the premium paid on an illegal insurance, to'recover a trading with an enemy, cannot be recovered back, though the underwriter cannot be compelled to make good the loss. And at page 645, the author thus sums up the law, on the subject of illegality, as affecting the standing of parties in Court ¡
“Upon the whole, then, it seems that the true test for determining Whether or not the objection that plaintiff and defendant were in paridelicio can be sustained, is by considering whether the plaintiff can make out his ease otherwise than through the medium and by the aid of the illegal transaction to which he himself was a party. For instance, A based an illegal wager with B, in which C agreed with A to take a share ; B lost the wager, and A, in expectation that B would pay the amount on a certain day, advanced to O his share of the winnings. B died insolvent before the day, and the bet was never paid ; it was held that A could not recover from C the sum thus advanced.” The plaintiff, observed Gibbs, C. J., (Simpson v. Bloss, 7 Taunt. 246, 250), says : “The payment was on a condition which has failed, but that condition was that B, who was concerned with the plaintiff and defendant in the illegal transaction should make good his part by paying the whole bet to the plaintiff, and it is impossible to prove the failure of this condition without going into the illegal contract in which all the parties are equally concerned.
We think, therefore, that the plaintiff’s claim is so mixed up with the illegal transactions, in which he and the defendant B were jointly engaged, that it cannot be established without going into proof of that transaction, and therefore cannot be enforced in a Court of law.
In the case of Armstrong v. Foley, 11 Wheat. 258, as Was said by this Court in Davis v. Holbrook, 1 An. page 178, the Supreme Court of the United States, through its organ, Chief Justice Marshall, lays it down, as a general principle, which is perfectly settled, that no action can be main *333 tained on a contract, the consideration of which is wicked in itself, or prohibited by law; and the Court, after declaring valid contracts unconnected with the original illegal act, although '-remotely caused by it, continues :
“ But if the importation is the result of a scheme between the plaintiff and defendant, or if the defendant has any interest in the goods, or if they are consigned to him with his privity, in order that he may protect them from the owner, a promise to repay any advances made under such understanding or agreement is utterly void.”' Davis v. Holbrook, 1 An. 178. Gravier’s Curator v. Carraby’s Executor, 17 La. 131.
A contract must have a lawful purpose—and, if it have an unlawful cause, if it be contrary to good morals or public order, it can have no effect. Civil Code, Arts. 1772, 1887, 1888, Pothier’s Obligations, g 43 e seq; Bartle v. Coleman, 4 Peters 186.
Marcadé, differing from many jurisconsults, imbued with the doctrine of the Roman law and taught by Pothier, that the law cannot be invoke d to sustain an action based upon an illicit agreement. He says the articles of the French Code, identical with our own, will not permit one man to enrich himself at the expense of another. And that Article, 1376, C. N., declares in the most absolute njanner, that whoever receives what is not due to him must restore it, without any distinction—why or how the thing not due came into his hands. This obligation of restoration with us, exists only in cases in which an alleged benefit arises from a lawful act.
Our Courts will not condescend to decide controversies tainted with illegality or immorality, as “Nemo cdlegans suam turpitudinem est audiendus.” They deem such agreements absolute nullities, and quod nullius est confirman nequit.
It is therefore ordered, adjudged and decreed,, that the plaintiff’s action be dismissed, at the costs of the appellant.