## REINSTINE v. ROSENFIELD et al.
### No. 7107.

Circuit Court of Appeals, Seventh Circuit.
May 8, 1940.

Edgar J. Bernheimer, of New York City, Benjamin Wham, of Chicago, Ill., and Sydney J. Schwartz, of New York City, for appellant.

John C. Slade and Frank B. Gilmer, both of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

By this action in equity appellant Reinstine, as executor of the will of Isaac Rosenfield, deceased, sought an accounting and a recovery from the appellees, William, Morris and John Rosenfield, individually and as trustees under the will of Louis Rosenfield, deceased, and also Sarah M. Rosenfield, a widow, and Ethel R. Harris. After a joinder of issues and trial, the District Court, on May 1, 1939, dismissed the

cause for want of equity. Subsequently, on September 25, 1939, the District Court made a finding of facts and rendered its conclusions of law thereon. On October 3, 1939, the parties stipulated that the findings of fact and conclusions of law be incorporated in the record to be filed in this court, and that was done. An appeal was taken from the decree of May 1, 1939.

The complaint sought an accounting from the defendants of twenty-two per cent of four thousand shares of National Distillers Products Company stock which the defendants received from the sale by them of the distillery property in Louisville, Kentucky, on July 12, 1933. The property sold had belonged to the defendants' testator, Louis Rosenfield, prior to his death on November 4; 1926, and had been purchased by him from Sunnybrook Distillery Company, the former owner, at public auction on December 19, 1917. The basis for the alleged right to an accounting was an alleged oral agreement between Louis Rosenfield and the other members of the copartnership of Rosenfield Brothers and Company, that whenever the purchased property should be sold by the purchaser, the net proceeds thereof should be divided among the copartners and the personal representatives of those deceased, in the proportions in which the individuals were interested in the copartnership. It was alleged that Isaac Rosenfield's interest therein was twenty-two per cent.

The following facts were specially found, by the District Court and were substantially supported by evidence. On and prior to December 19, 1917, the copartnership was engaged in the business of selling whiskey manufactured by Sunnybrook Distillery Company, a Kentucky corporation, at its distilling plant in Louisville, Kentucky. There were five members of the copartnership, to-wit: Isaac, Louis, Morris S. and Joseph F. Rosenfield, who were brothers, and William Leith. They constituted the board of directors and some of them were its officers. As individuals they, and members of their respective families, owned the corporation's capital stock. All the brothers except Morris S. had died prior to the filing of the original complaint on January 30, 1934, and he also was dead at the time of the trial, but his deposition had been taken and was admitted in evidence.

The sale was provided for in a written agreement of November 21, 1917, executed by all of the stockholders of Sunnybrook Distillery Company, and approved by a resolution of the board of directors adopted at their meeting on November 24, 1917, at which all five directors were present. The agreement and resolution provided for the sale of the property at public auction to the highest bidder, and the agreement subsequently authorized any stockholder, even though he might be a director or officer, to pay for and become the purchaser at such sale in his own right and for his individual use and benefit.

The distillery property, offered at the sale on December 19, 1917, included lands, buildings, equipment, machinery and fixtures comprising the plant, and also the brands, trade-marks and trade names under which the Distillery Company's products had been sold for many years, but did not include the stock on hand or bottling supplies. The offer of the property was expressly made subject to a four-year reservation by the seller of the use of designated portions of the property for the storage of the whiskey then on the premises, and for its bottling, handling and removal, in consideration of which the seller agreed that during the period of such reservation it would pay an annual rental of an amount equal to seven per cent of the highest amount bid at the sale for the plant alone, together with one-third of the real estate taxes against the premises, and would keep the used property in repair.

Louis Rosenfield was the highest bidder at the sale and became the purchaser at a total price of $55,000, of which $20,000 was bid and paid for the brands and $35,000 for the physical property. These amounts were paid to the Sunnybrook Distillery by Louis Rosenfield and he remained the owner of the property until his death. There was no evidence that Isaac Rosenfield, or Rosenfield Brothers and Company, or anyone other than Louis Rosenfield himself, furnished any part of the purchase price.

At the time of the sale further distillation of whiskey in the United States had been prohibited as a war measure, and in consequence thereof, and the advent of national prohibition which was then considered certain, the business of manufacturing whiskey as it had theretofore existed appeared to have come to an end. The sale of the distillery property to the highest bidder at public auction was agreed upon, and the sale was held, pursuant to the advice and under the supervision of the corporation's attorney, Nettleroth, for

the purpose among others of ascertaining the exact loss in asset value that had been sustained by the corporation in order that such loss could be deducted in computing the corporation's income tax for the year 1917. Such deduction was thereafter claimed by the corporation, and after investigation of the sale by the Internal Revenue Department, allowed.

Isaac Rosenfield disposed of all his shares of stock in the Sunnybrook Distillery Company after the date of the sale, and had no interest therein or in the corporation at the time of his death on July 9, 1931.

The court found that the evidence of Morris S. Rosenfield and the corporation's attorney, Nettleroth, and the exhibits presented negatived the claim that the distillery property was either sold by Sunnybrook Distillery Company, or purchased by Louis Rosenfield, pursuant to any agreement or understanding whereby the copartners of Louis Rosenfield, or their representatives, should be entitled to a share in the net proceeds realized by him or his estate from a sale or disposition of such property, or that any such agreement was ever made. The court further found that there was a complete failure of proof of the agreement, as alleged in the complaint, or of any agreement or circumstances under which Isaac Rosenfield or the plaintiff became entitled to any share or interest in the proceeds of the sale of the distillery property by the defendants.

Upon these findings the court concluded that the agreement relied upon was not enforceable in a court of equity in that, if made, it would have been an agreement to perpetrate a fraud, hence contrary to public policy and illegal; that the alleged promise of Louis to give his copartners and their personal representatives a share in the proceeds realized from any sale of the property, if made, would be unenforceable for lack of legal consideration; that even if the sale as alleged was not a valid bona fide one, the plaintiff would not thereby become entitled to any relief against the defendants because Isaac Rosenfield had parted with all his interest in the capital stock of Sunnybrook Distillery Company before his death and thereafter had no interest in the corporation as a stockholder or otherwise; and that the complaint should be dismissed for want of equity at plaintiff's costs.

We are first met with appellant's contention that the District Court had no power to make the findings after the decree was entered. He bases this contention upon Rule 52 of the Rules of Civil Procedure for the District Courts, 28 U.S. C.A. following section 723c. That rule provides that in all actions tried upon the facts without a jury, the court shall find the facts specially. It further provides that upon the motion of a party, made not less than ten days after entry of judgment, the court may amend its findings or make additional findings and may amend the judgment accordingly. Appellant's contention seems to be that under this rule the court cannot amend or add findings after judgment is rendered unless one of the parties makes a motion to that effect. We are not convinced that this was the intention of Congress. If there had been no findings made we have no doubt that it would have been the duty of this court to require the District Court to make special findings, and to have them certified here for our consideration in determining the validity of the decree. The District Court, however, in this case anticipated such a ruling and subsequently filed its special findings and conclusions of law. Moreover, appellant was aware of this fact and stipulated with appellee that they should be incorporated in the record to be filed in this court, and that was done. Under these circumstances we think there was no error.

Appellant, however, further contends that the court erred in adding additional conclusions of law, in that when the court actually announced its ruling it gave no other basis than that the alleged oral agreement, if made, constituted a fraud upon the United States Government. We think there is no merit in this contention. From time immemorial Courts of Appeal have been authorized to affirm the rulings of lower courts for any valid reason based upon the evidence, although not assigned. We find nothing in the present rules to prevent such a procedure, and the court's conclusions in this case certainly come within the purview of the facts found.

Appellant further contends that the agreement relied on by him was not in fraud of the United States Government. He bases this contention on a line of cases which hold that sales by corporations to stockholders, or by stockholders to corporations, may be upheld, provided they are

valid, bona fide sales, even though made to establish losses for income tax purposes. In support of this contention he relies upon the Government's approval of the sale, and allowing deduction for the losses. However, it is clear from the evidence that the Government's approval was obtained upon the representation that the sale was made in good faith, and without any secret oral understanding between the parties. Under these circumstances, it cannot be said that the cases cited are applicable. We think the court's conclusion in this respect was right. See Dent v. Ferguson, 132 U.S. 50, 10 S.Ct. 13, 33 L.Ed. 242; Wheeler v. Sage, 1 Wall. 518, 68 U.S. 518, 17 L.Ed. 646; Randall v. Howard, 2 Black 585, 67 U.S. 585, 17 L.Ed. 269; and Bartle v. Nutt, 4 Pet. 184, 29 U.S. 184, 7 L.Ed. 825.

It is further contended by appellant that the alleged agreement was not unenforceable for want of a legal consideration. In this respect he first contends that a consideration is found for the undertaking of Louis to account to the other members of the copartnership, in their forbearance in bidding at the sale for their own personal benefit; and that aside from the question of consideration a further answer is that the relationship between the partners was fiduciary in its character, and one member of the partnership will not be permitted to profit at the expense of the others under the circumstances presented. We do not understand that an agreement to refrain from bidding and thus stifle competition at an auction sale constitutes a sufficient consideration to support such a contract as is here presented. The contrary is held in Kine v. Turner, 27 Or. 356, 41 P. 664. We approve the reasoning of that case and the cases which are cited in support of it. If there was a fiduciary relationship between these parties, we think that fact cannot be relied upon to enforce an invalid agreement. The District Court's conclusion in this respect was right.

Appellant further contends that the oral agreement pleaded and relied on is established by evidence. We cannot so hold. Under Rule 52 we are required to review the evidence, but that does not mean that in all cases we should substitute our interpretation and construction of the evidence for that of the trial court. That rule provides that findings of fact should not be set aside unless clearly erroneous, and due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. It is true that some of the testimony in this case was by deposition, and as to that we would probably be in as good a position to judge as was the trial court. However, there was oral testimony given and aside from that, and aside from the irregularity of filing the findings and conclusions subsequent to the judgment, we think the evidence in this case fairly supports the decree in all respects as set forth in the conclusions of law, and we are further of the opinion that the findings of fact, although belated in their filing, are substantially supported by the evidence submitted.

The decree is affirmed.