### JONES et al. v. MEDLOCK et al.

### HALL et al. v. HUBBARD et al.

#### Nos. 3970, 4000.

United States Court of Appeals
Tenth Circuit.
Feb. 21, 1950.

Rehearing Denied March 16, 1950.

Sid White, Oklahoma City, Okl. (A. L. Beckett, Oklahoma City, Okl., on the brief for appellants in Number 3970), for appellants.

W. R. Withington and Harlan Deupree, Oklahoma City, Okl. (Richard R. Linn and Breck Moss, Oklahoma City, Okl., on the briefs), for appellees.

Before HUXMAN, MURRAH, and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

While separate appeals were taken in these two cases, they present identical questions. They were argued together and will be disposed of in a single opinion. They grow out of agreements executed between all of the owners of the real estate of the North Half of Block 8, Jordan Place Addition, and of Block 13, in Oak Park Addition, to Oklahoma City. The contracts between all the owners of such real estate declared their purpose to be the maintenance of property values for the mutual benefit of all. The two contracts were substantially the same in all material respects and the pertinent part of only one will be set out. To effectuate such purpose, the parties covenated and agreed with each other that none of them or their successors would ever sell their property in the block to any person of the Negro or African race. The agreement provided: "* * * that any deed * * * made in violation of said contract shall be void and may be set aside on petition of one or more of the parties hereto; and when such conveyance is set aside by decree of the court, all costs and all expenses of such proceeding shall be taxed against the grantor or grantors and shall be declared * * * to constitute a lien against the real property so wrongfully deeded * * * and such lien may be enforced in such manner as the Court may order."

In Number 4000, on September 8, 1944, E. G. Schwartz and Emma Schwartz, husband and wife, conveyed three lots in the North half of Block 8 to Ira D. Hall and Ruby M. Hall, members of the Negro race, by warranty deed. John C. Hubbard, an owner of property in the North half of Block 8, thereupon brought an action in the District Court of Oklahoma County to enforce the agreement. He prayed judgment cancelling and setting aside the deed made to the Halls by Schwartz; that the Halls be enjoined from further occupancy or ownership of the property; and for costs and attorneys' fees. Other relief was prayed for but the above sets out all that is necessary to dispose of the question presented by this appeal.

Schwartz undertook the defense of the action, employed attorneys, and filed answers on behalf of himself and the Halls. The answers admitted the execution of the contract but alleged that the same was no

longer of value in that since the execution thereof the property involved in the contract had changed by reason of having become surrounded by Negro property owners so that it had become impractical to carry out the original intention and purposes of the contract; that the restrictive provisions of the contract had ceased to have force and effect and were no longer of value and asked that the restrictive contract be declared invalid and cancelled.

The trial court rendered judgment for the plaintiff enforcing the contract, cancelled the conveyance from Schwartz to the Halls, and revested the title in the grantors, the Schwartzes, perpetually restrained and enjoined them from selling, leasing, or disposing of any of the property covered by the contract to Negroes, ordered the Halls to vacate the premises they occupied, enjoined them from any further occupancy in the area, and provided for further appropriate action to compel compliance with the court's judgment. An appeal was taken to the Supreme Court of the State of Oklahoma and the judgment of the trial court was affirmed. See Schwartz v. Hubbard, 198 Okl. 194, 177 P.2d 117.

In Number 3970, a similar action was instituted in the State Court by Alice C. Medlock, an owner of lots in the North Half of Block 9, against the appellants, Bertha Jones, Taylor Jackson, Bernice L. Jackson, and J. D. Shipman and Ella Shipman, W. B. Eaton and Maud Eaton, their grantors. Others were made parties to that action but since they are not involved in this appeal, no reference is made to them. The allegations of the complaint and the prayer for relief, so far as material to the question here, were substantially the same as outlined in Number 4000. A judgment cancelling the deeds, revesting the title in the grantors and enjoining them from selling the property to members of the Negro race was entered. An appeal was taken from this judgment to the Supreme Court of Oklahoma. See Shipman v. Medlock, 199 Okl. 128, 184 P.2d 764, where the judgment of the trial court was upheld upon the authority of Schwartz v. Hubbard, supra.

Writs of Assistance were issued in both cases to evict appellants from the premises. Various steps were taken in the State Court actions by appellants in resisting such writs. Since none of these steps are material to the questions in issue in this appeal, no further reference will be made to them.

Thereafter these two actions were instituted in the District Court of the United States for the Western District of Oklahoma. The action in Number 3970 was instituted by Bertha Jones, Taylor Jackson and Bernice L. Jackson, against Alice C. Medlock, the plaintiff in the State Court action, and against J. D. Shipman and Ella Shipman, his wife, grantors in the deed to appellants. Others who have no interest in the appeal were also joined as defendants. In Number 4000, the action was instituted by appellants, Ira D. Hall and Ruby M. Hall, against John C. Hubbard, plaintiff in the State Court action, and E. G. Schwartz and Emma Schwartz, grantors in the deed to the Halls, and other defendants not necessary to this appeal. Basically the complaints in the two cases are substantially the same and the material allegations thereof, so far as involved in this appeal, may be summarized as follows:

The complaints, in substance, alleged that the actions were civil actions in which the amount in controversy exceeded, exclusive of costs and interest, the sum of $3,000.00; that they arose under the Constitution and laws of the United States, and also under Section 1343, Subdivision (3), 28 U. S.C.A., they being civil actions to redress the deprivation under color of any state law, statute, ordinance, regulation, custom or usage, of civil rights, privileges and immunities secured by the Constitution of the United States and the Act of Congress providing for equal rights of citizens; and also under Sections 2201 and 2202 of the Code.

The complaints recited the deeds from the respective grantors to appellants, all Negroes, the consideration therefor and payments made thereunder, the restrictive agreement, the actions instituted in the State Court, and the results thereof.

It was alleged that the defenses interposed in said causes were that the condition of the property and the surrounding properties had so changed since the execution of the restrictive agreement that the same was no longer effective nor capable of serving the purposes thereof and was impractical and impossible of enforcement; that prior to the decision by the Supreme Court and the mandate filed in the office of the Court Clerk of Oklahoma County, the defendants had intended, in good faith, to endeavor to protect and secure to the appellants their right and title to the property conveyed to them by the deeds, but as shown by the record, since the decision by the Supreme Court, the defendants in each case had conspired and acted together to secure to themselves not only the possession and title to said property, but also to compel the appellants to pay the entire judgments in the State actions; that the judgments and service of process issued out of the District Court of Oklahoma County were actions of the State and that said judgments were all void and were nullities, for the reason that they violated the provisions of Section 1, of the Fourteenth Amendment of the Constitution of the United States; that the restrictive agreement and the judgments of the court founded thereon were void because in violation of the Fourteenth Amendment of the Constitution of the United States; that said decrees and judgments deprived the appellants of their property without due process of law and denied them equal protection of the laws; that they were entitled to a declaratory judgment finding and declaring the rights and relations of all parties, their interest in the property, as well as their rights against Alice C. Medlock and John C. Hubbard, and for an order restraining the plaintiffs in the State action from further proceedings therein until this declaration might be had. No temporary restraining order was issued.

In both cases, the defendants filed motions to dismiss the cause of action on the ground that the complaints failed to state a cause of action, and on the further ground that the court lacked jurisdiction. The motions were sustained and these appeals followed.

These appeals are predicated on the ground that the judgments in the Oklahoma State Court in the case of Hubbard v. Schwartz et al., and Medlock v. Shipman et al., were void. Thus, in appellants' brief in Number 3970, it is stated: "The matters to be considered and determined by this Court will depend largely upon the Court's conclusion as to the validity of the judgment of the District Court of Oklahoma County, Oklahoma * * *."

It is obvious from a reading of the opinions of the Supreme Court of Oklahoma in the two State cases, as well as from appellants' allegations in their complaints in these actions, that the State Trial Court had jurisdiction of the parties and the subject matter of the action. In the State Court actions, the appellants joined in the request that the trial court adjudicate the legality of the restrictive agreement before it in those actions by seeking an adjudication cancelling the agreement. This they failed to obtain. In these actions, they concede that the grantors acted in good faith in defending those actions before the trial court, as well as the Supreme Court, and that the alleged conspiracies to deprive them of their property occurred only after the decisions by the State Trial Court and in the Supreme Court. Since the State Court had jurisdiction of the subject matter and the parties to the action, it is obvious that its judgments were not void. The most that can be said is that such judgments were erroneous.

Furthermore, the Federal question now urged for the first time was not an issue in the State cases. As pointed out, the entire defense in those cases was that the changed conditions made it inequitable to further enforce the restrictive agreement and required its cancellation. Obviously the State Court judgments could not be void because the court did not of its own volition raise and decide an issue not presented by the parties.

It is well settled that a Federal court lacks jurisdiction to vacate or set

aside judgments or decrees of state courts. In Moffett v. Robbins, 10 Cir., 81 F.2d 431, 435, this court said: "It is equally well settled by the decisions of this court and others that a United States court cannot vacate a judgment or decree of a state court, nor mandate that court to do so."[1]

Affirmed.

---

1. To the same effect see Randall v. Howard, 2 Block 585, 67 U.S., 585, 589, 17 L.Ed. 269; Nougué v. Clapp, 101 U.S. 551, 553, 25 L.Ed. 1026; Gravitt v. Shell Oil Company, D.C., 36 F.Supp. 841, 842.