27 F.3d 570
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Scott WEXLER, Plaintiff-Appellant,
v.
CITY OF CHICAGO, Caesar Blanco, Individually and as District
Officer, Cortez Trotter, Individually and as
Assistant Chief Paramedic, et al.,
Defendants-Appellees.
 No. 93-1425.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 14, 1994.
Decided June 16, 1994.
 
 Before CUMMINGS, BAUER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 The plaintiff, Scott J. Wexler, a paramedic with the Chicago Fire Department, filed this 42 U.S.C. Sec. 1983 complaint alleging anti-semitic and discriminatory treatment by his supervisors and various individuals in the Fire Department (the "City defendants"). The plaintiff also alleged improper handling of his grievance by the Chicago Fire Fighters Union (the "Union"). The district court granted the defendants' motions to dismiss on the grounds that the claims were barred by the two-year statute of limitations. At the time the trial court granted the motions to dismiss, the court also ruled that the plaintiff's motion to disqualify the Union's counsel, Stephen Horwitz, was moot.
 
 BACKGROUND
 
 2
 The plaintiff, Scott Wexler, commenced employment as a paramedic in 1982 and was a member of the Chicago Fire Fighters Union. The Union was the bargaining agent for disputes between the members of the Union and the City. Between 1984 and 1987, the plaintiff contends that he was subjected to anti-semitic harassment by his supervisor, District Officer Caesar Blanco. The plaintiff's allegations included claims that he was subjected to discipline without grounds and he was often referred to with anti-semitic references and obscene language. Wexler alleges that he registered numerous complaints against Blanco through the Fire Department's internal complaint procedure. He also claims he filed two requests for transfer into another district but District Officer Blanco squelched the complaints as well as the transfer requests (i.e., Blanco never processed them, thus Fire Department officials never knew of the complaints or transfer requests). The plaintiff also states that he filed grievances with the Union which voted to take these grievances to arbitration, yet arbitration was never pursued despite assurances from the Union officials that it was planning to arbitrate the grievances. In 1987, based on the discriminatory treatment he was receiving from District Officer Blanco, Wexler once again applied for a transfer to a different district, and on February 12, 1987, his request for a transfer was approved. Following his transfer, no further action was pursued on Wexler's grievances and complaints dealing with his discriminatory treatment.
 
 
 3
 In April 1989, when Wexler was working in his new district, the Fire Department received a citizen complaint alleging improper behavior by Wexler during a call. The complaint alleged rudeness, inappropriate response time, failure to seek assistance in carrying a citizen downstairs, and failure to contact the hospital before transporting the patient. Wexler alleges that three Fire Department employees[1] embellished the allegations in the citizen complaint and/or participated in preparing a falsified report containing the findings of the Department's investigation into the incident. He asserts that based on this allegedly false report, on August 23, 1989, he was notified of his termination effective August 16, 1989. The discharge was based on Wexler's poor job performance alleged in the April 1989 citizen complaint and for his history of disciplinary problems under District Officer Blanco (Blanco cited Wexler for eleven disciplinary violations between 1984-87). The next day, August 24, Wexler filed a grievance disputing his discharge from the Fire Department.
 
 
 4
 The plaintiff maintains that from August 24, 1989 until October 19, 1990, he contacted the Union on numerous occasions to ascertain the status of his grievance challenging his termination. On November 19, 1990, the plaintiff received a letter from Richard A. Wagner, President of the Fire Fighters Union, explaining that the delay in the arbitration of the discharge grievance was due to the fact that more than 200 files, including plaintiff's, had been misplaced but that the matter was finally set for arbitration. On January 12, 1992, the arbitrator handed down his decision (on Wexler's discharge) and ordered the City to reinstate Wexler to his paramedic position along with six months of back pay.[2] The arbitrator's award of back pay was based not on a finding of discrimination but on the excessive delay of the Union and the City in arbitrating the grievance involving the discharge. The arbitrator made no finding as to the alleged religious persecution. On May 21, 1992, Wexler commenced this civil rights action under 42 U.S.C. Sec. 1983 alleging that Chicago Fire Department officials discriminated against him on the basis of religion and that Union officials improperly handled the grievance challenging his discharge.
 
 
 5
 When this case was pending before the trial court, the plaintiff, Wexler, filed a motion to disqualify Stephen Horwitz from representing the Union because Horwitz was the Union attorney who had represented Wexler during the arbitration proceeding dealing with his improper discharge. Wexler claims that Horwitz obtained confidential information while representing him during the arbitration and thus he should be prohibited from representing the Union in the present litigation because (1) he possesses confidential information, (2) his representation may result in a conflict of interest and, (3) since Wexler has not yet been reinstated by the City, Horwitz has a continuing obligation to Wexler pursuant to the discharge grievance proceeding until that matter is resolved.
 
 ISSUES
 
 6
 The issues are as follows: (1) whether the district court erroneously granted the City's motion to dismiss on the grounds that the suit was not filed within the two-year Illinois statute of limitations, (2) whether the trial court properly dismissed the plaintiff's suit against the Union, and (3) whether the court abused its discretion in resolving the motions to dismiss prior to addressing the motion to disqualify Union counsel, Stephen Horwitz.
 
 DISCUSSION
 Standard of Review
 
 7
 We review a motion to dismiss de novo. Caldwell v. City of Elwood, 959 F.2d 670, 671 (7th Cir.1992). In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), this court "must accept as true all the plaintiff's well-pleaded factual allegations and inferences reasonably drawn from them." Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir.1992). A court need not, however, accept the plaintiff's legal conclusions. Rogers v. Lincoln Towing Service, Inc., 771 F.2d 194, 197 (7th Cir.1985).
 
 Statute of Limitations
 
 8
 In 1985, the U.S. Supreme Court held that in Sec. 1983 claims the relevant statute of limitations is that for personal injuries in the forum state (Illinois). Wilson v. Garcia, 471 U.S. 261, 276 (1985). Illinois has a two-year statute of limitations for personal injuries, Ill.Rev.Stat. ch. 110, para. 13-202, thus any Sec. 1983 suit not filed within two years of the alleged constitutional injury is barred. Smith v. City of Chicago Heights, 951 F.2d 834, 839 (7th Cir.1992). In the instant case, the plaintiff concedes that his suit was filed more than two years after the alleged injuries but he contends that two equitable doctrines prevent the statute of limitations from barring his suit: equitable estoppel and equitable tolling.
 
 Equitable Estoppel
 
 9
 The alleged religious discrimination against Scott Wexler occurred between 1984 and 1987, while the alleged wrongful discharge occurred on August 23, 1989. Wexler did not file suit until some five years after the alleged religious discrimination ceased and some three years after his discharge. He claims that the defendants should be equitably estopped from raising the statute of limitations as a defense because he relied on the defendants' representations that he could not file suit until after the arbitration of his discharge was completed.
 
 
 10
 "Equitable estoppel 'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." Smith, 951 F.2d at 840 (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir.1990), cert. denied, 111 S.Ct. 2916 (1991)). "In essence, equitable estoppel focuses on whether the defendant acted affirmatively to stop or delay the plaintiff from bringing suit within the limitations period." Id. at 841. Thus, we must examine the plaintiff's pleadings to determine whether the defendants' conduct, as alleged, estops them from arguing the defense of the statute of limitations. In paragraph 67 of the amended complaint, the plaintiff claims
 
 
 11
 Mr. Stephen Horwitz, who represented the Plaintiff's interests at the arbitration disputing his discharge, repeatedly told the Plaintiff that no legal action in support of his civil, and other, rights could be taken until the arbitration and any other internal remedies were fully pursued. Plaintiff was given similar information by Union officials and outside attorneys he consulted. The Union continually gave Plaintiff assurances that his matters were being attended to. Plaintiff had no reason to suspect that grievances had been lost, and that the Union was covering up this fact. Plaintiff also had no way of knowing that the Union was going along with the City's delay of his discharge arbitration. In reliance on these representations, and as directed, Plaintiff pursued the arbitration only, which allowed more than two years to pass on the present claim. The Plaintiff was never apprised of the fact that after two years he would be faced with a statute of limitations which could block the bringing of an action in a court of law.
 
 
 12
 (Emphasis added). Conspicuously absent from this complaint is any allegation that the plaintiff relied on a representation from the City that he could not bring his suit until after the arbitration was completed. Not until oral argument before this court did the plaintiff attempt to identify a City official who informed him that he could not file suit until after the arbitration.[3] As this court has stated on numerous occasions, arguments raised for the first time on appeal are waived. Hickey v. A.E. Staley Mfg. Co., 995 F.2d 1385, 1392 n. 3 (7th Cir.1993) ("[b]ecause appellants did not introduce [the] evidence at the trial court, they have waived their right to do so on appeal, 'a party opposing a summary judgment motion must inform the trial court of the reasons, legal or factual, why summary judgment should not be entered' ") (quoting Ryan v. Chromalloy American Corp., 877 F.2d 598, 603-04 (7th Cir.1989). Having failed to instruct the trial court of any basis for estopping the City from asserting the statute of limitations, we reject plaintiff's argument that equitable estoppel bars the City defendants from seeking dismissal on the basis of the statute of limitations.
 
 Equitable Tolling
 
 13
 "Equitable tolling 'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.' " Smith, 951 F.2d at 839 (quoting Cada, 920 F.2d at 451). "In a nutshell, equitable tolling focuses on whether the plaintiff exercised due diligence but was nevertheless unable to determine information needed to bring a claim." Id.
 
 
 14
 Plaintiff's brief contains citations to case law on equitable tolling but we have been unable to discern any facts in this record supporting the plaintiff's theory that he was "unable to determine information needed to bring [his] claim." Id. Wexler was given notice of his discharge on August 23, 1989 (effective August 16, 1989). The very next day, August 24th, he filed a grievance with the Union challenging his discharge on the grounds that he was not given an opportunity to respond to the charges against him. Obviously at that point in time he knew he had been injured and that City officials had caused his injury by improperly discharging him. While Wexler may not have known all the specific facts at that time,[4] had he "exercised due diligence," he certainly had could have obtained enough information to file a complaint given the liberal "notice" pleading in federal court. See Fed.R.Civ.P. 8(a). Moreover, through the process of discovery he could have obtained the additional necessary information to proceed with his suit. As we held in Cada, the plaintiff must exercise "all due diligence" to discover the information vital to his suit prior to the running of the statute of limitations. The issue in this case is unsuited to an equitable tolling analysis because the plaintiff took no steps to discover whether he was unjustly injured prior to the running of the limitations period (due to his allegation that the Union informed him he had to await completion of the arbitration). Accordingly, we affirm the trial court's granting of motion to dismiss in favor of the City because the suit was not filed within the two-year statute of limitations and because plaintiff has failed to establish either an equitable estoppel or equitable tolling claim to the City defendant's statute of limitations defense.
 
 Dismissal of the Claims Against the Union[5]
 
 15
 Having held that the trial court's dismissal of the City defendants was proper, we now turn to the Union, which raised numerous arguments before the trial court and on appeal for dismissal of the claims against it. In addition to dismissing the Sec. 1983 claims against the Union on the basis of the statute of limitations, the trial court also stated that the claims could be dismissed because the plaintiff alleged only negligence which is insufficient to state a claim under Sec. 1983. Kincaid v. Vail, 969 F.2d 594, 602 (7th Cir.1992); see also Jones v. Hamelman, 869 F.2d 1023, 1031 (7th Cir.1989) ("the level of culpability required for a finding of liability in a Sec. 1983 action is higher than mere negligence").
 
 
 16
 The inartfully drafted complaint identifies a number of allegations and defendants making it most difficult to parse through and determine what exactly the plaintiff is claiming the Union did. The plaintiff, on appeal, challenges only the dismissal of his Sec. 1983 claims on the basis of the statute of limitations. Wexler has a valid argument that the Union be estopped from asserting the statute of limitations because the Union, through Stephen Horwitz, instructed Wexler that he could not file a lawsuit until his arbitration was resolved. In spite of this fact, Wexler cannot prevail on appeal because he has failed to allege anything more than mere negligence on the part of the Union in processing his complaint, Jones, 869 F.2d at 1031, and he has also failed to allege that the Union was a state actor, Kellas v. Lane, 923 F.2d 492, 494 (7th Cir.1990), or engaged in joint action with a government entity. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-152 (1970) (holding that if a state official and a private party "reach an understanding" to deny a plaintiff's federal rights, such a "conspiracy plainly provides the state action essential" to maintain a Sec. 1983 claim); see also Cunningham v. Southlake Center for Mental Health, 924 F.2d 106, 107-08 (7th Cir.1991) ("[a] charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights"). Accordingly, because Wexler has alleged only negligence on the part of the Union and has failed to allege that the Union and the City "reached an understanding" to deny Wexler his constitutional rights, we affirm the dismissal of the Sec. 1983 claims against the Union.[6]
 
 
 17
 Disqualification of Attorney Stephen Horwitz
 
 
 18
 Finally, we address the question of whether the trial court erred in deciding the defendants' motions to dismiss prior to resolving plaintiff's motion to disqualify Union attorney Stephen Horwitz. We review a motion to disqualify counsel for an abuse of discretion. E.g. Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir.1993). In this case, however, we are not reviewing the court's decision to disqualify counsel but rather the court's decision to grant a motion to dismiss prior to deciding the motion to disqualify counsel. It is clear that "[d]istrict court judges, because of the very nature of the duties and responsibilities accompanying their position, possess great authority to manage their caseload." United States v. Reed, 2 F.3d 1441, 1447 (7th Cir.1993).
 
 
 19
 In this case, Attorney Horwitz's participation in this lawsuit was quite minimal and even if he possessed privileged information from his prior representation of the plaintiff, there has been no showing made in this record that the alleged confidential information was used to the plaintiff's detriment in the present litigation. Horwitz merely filed a motion to dismiss based on the statute of limitations, failure to state a claim, and lack of subject matter jurisdiction. Had the court denied the Union's motion to dismiss, and the case proceeded to trial, it is likely that Horwitz would have been disqualified because of his prior representation of Wexler. See, e.g., Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221, 223-35 (7th Cir.1978). It certainly would have been a far better practice for Horwitz to have found some other able attorney to represent the Union against Wexler in this civil complaint and thus avoid even the appearance of unfairness. Although there may be merit to the plaintiff's argument that Horwitz should have been disqualified had the case proceeded to the merits, as evidenced by the fact this court issued an order disqualifying him in this appeal, we are not convinced that the district court abused its discretion in deciding the fully briefed motion to dismiss and then concluding that because dismissal was proper, the motion to disqualify was moot.[7]
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Wexler names the three participants in the spurious investigation as defendants: Ernest Pentek, Patrick Howe and Debra Bugaj
 
 
 [2]
 As of the date of oral argument, February 14, 1994, Wexler had not resumed work as a paramedic but the record does not explain this delay in reinstating him
 
 
 [3]
 At oral argument plaintiff's counsel stated that Tom Connelly, an "employee liaison for the City," told Wexler he would have to wait until the arbitration was over to file suit
 
 
 [4]
 For instance, he claims he did not know who was responsible for his improper discharge
 
 
 [5]
 We have stated on numerous occasions that we may affirm a district court on any grounds supported in the record. See Indemnified Capital Investments v. R.J. O'Brien & Assoc. Inc., 12 F.3d 1406 (7th Cir.1993) ("from time immemorial courts of appeal have been authorized to affirm the rulings of lower courts for any valid reason based on the evidence, although not assigned") (quoting Reinstine v. Rosenfield, 111 F.2d 892, 894 (7th Cir.1940))
 
 
 [6]
 The plaintiff has not appealed the dismissal of the state law claims and thus they are not before us
 
 
 [7]
 Because the court granted the motion to dismiss, the motion to disqualify counsel was moot, thus we do not reach the issue of whether Mr. Horwitz's representation of Wexler in the arbitration proceeding was "substantially related" to the present litigation, see Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir.1983), or whether the "presumption of shared confidences" was rebutted. See id. Because there is a possibility that the matters are substantially related and there were shared confidences, we will forward a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission to allow it to determine whether Mr. Horwitz violated the Illinois Rules of Professional Conduct Rule 1.9 (Conflict of Interest: Former Client)