Sidney JONES, Plaintiff–Appellant,

v.

Counselor HAMELMAN, Sgt. Hampton,
Officer Likens, and Officer Swain,
Defendants–Appellees.

No. 87–2378.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1988.

Decided Feb. 22, 1989.

Richard E. Culley, Indianapolis, Ind., for plaintiff-appellant.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Sidney Jones is an inmate in the Indiana State Reformatory at Pendleton, Indiana, serving a 20-year sentence for attempted robbery. Jones filed a complaint against a number of prison officials and employees under 42 U.S.C. § 1983, alleging they failed to protect him from an assault by other inmates. The parties consented to a bench trial before a United States magistrate, and the magistrate dismissed the petitioner's complaint on the merits after trial. Jones appeals, and we affirm.[1]

## I. FACTS AND TESTIMONY

Jones was incarcerated at the Indiana State Reformatory on January 13, 1984, when he was transferred there from the Westville Correctional Center. Prior to his incarceration at the Westville facility, Jones had been an inmate at the Indiana State Prison in Michigan City, Indiana. Jones was placed in the disciplinary segregation section of the Administrative Segregation Unit of the Reformatory because of his involvement in a riot at Westville.

Jones testified that soon after his incarceration at the Reformatory, he learned that a contract had been placed on his life by inmates John Cole and Enoch Smith, both members of a prison gang known as the "Black Dragons."[2] Smith testified that on January 26, 1984, Jones sent him a note asking for his assistance in removing the contract on his life. Smith returned the note stating that he could not remove the contract and that Jones had to die. Jones further testified that Cole and inmate Melvin Love then began yelling at him, specifically, that when he came out of his cell, he was a dead man.

In response to these written and verbal threats, Jones claims that he gave separate notes to Sergeant Hampton and Officers Swain and Likens, and a letter to Counselor Hamelman sometime before the recreation period on January 27, advising them that he "feared for his life," and requesting that he not be released from his cell for recreation. Nonetheless, he was released for recreation, was assaulted, and suffered six stab wounds.

The magistrate determined that the assault occurred as follows:

"At approximately 5:11 o'clock p.m. on January 27, 1984, the plaintiff was released from his cell for recreation (rec) and treatment (shower).... The institution's log sheets shows that inmates Williams, Trotter, Montgomery, S. Jones [plaintiff] and Bell were all released for recreation at the same time...

---

**1.** In cases tried before the magistrate by consent of the parties, 28 U.S.C. § 636(c)(3) provides for direct appeal from the judgment of the magistrate "in the same manner as an appeal from any other judgment of a district court."

**2.** According to Jones, Cole wanted him dead because while they were both inmates at the Michigan City institution, Jones had informed prison officials there about drug trafficking in the institution, and had reneged on an agreement to sell Cole another inmate's shoes.

At about 6:50 o'clock p.m., plaintiff approached the cell house gate which was manned by Correctional Officer Swain and requested that he be let out of the unit. Officer Swain told him he did not have the authority to let him out or open the gate.... The plaintiff was attacked by inmates Trotter and Montgomery without warning within a few minutes after he left the gate at a point ten to twelve (10–12) feet from the gate.... Trotter stabbed Jones six times in the neck and cheek with a handmade 'ice pick' within 30 to 40 seconds of the onset of the attack. Jones obtained the ice pick during the attack and threw it through the bars to Officer Swain who had summoned assistance in accordance with unit procedures. Officer Swain was Gate Officer and had neither a key to open the gate or a weapon of any kind. Reinforcement officers, including Sergeant Hampton, from other units responded to Swain's summon for assistance and when enough reinforcements arrived to control the situation they entered the unit, removed Jones, and took him to the institution hospital for examination and treatment by the staff physician."

On November 28, 1984, Jones filed a *pro se* complaint in the United States District Court for the Southern District of Indiana against the State of Indiana, the Indiana Department of Corrections, Indiana State Reformatory Superintendent Norman Owens, and five employees of the Reformatory: Counselor Morris Hamelman, Sergeant Michael Hampton, Sergeant Kenneth Ray, Officer Thomas Likens, and Officer James Swain. At the outset, the district court dismissed the State of Indiana, the Indiana Department of Corrections, Sergeant Ray, and Superintendent Owens as defendants *sua sponte* pursuant to 28 U.S.C. § 1915(d).[3] Jones' *pro se* complaint alleged only that Counselor Hamelman, Sergeant Hampton, Officer Likens, and Officer Swain ignored his notes and oral pleas for protection and, as a result, he was attacked by Trotter and Montgomery.[4] Jones further alleged that the officers failed to take immediate and appropriate action to protect him after the assault was initiated.

After this action was transferred for trial to the United States Magistrate, Jones filed a petition for a writ of habeas corpus *ad testificandum* requesting the court to allow him to be present at trial. The magistrate denied the motion on April 3, 1987. On April 29, 1987, Jones filed a motion for leave to amend his complaint and for joinder of additional parties. The magistrate denied this motion ruling that Jones had failed to tender an amended complaint with his motion. On May 5, 1987, Jones filed a similar motion and tendered an amended complaint. On June 1, 1987, the magistrate denied this motion because the tendered complaint failed to frame the issues before the court more accurately than the original complaint.

At the conclusion of the trial the magistrate dismissed all the defendants finding they were not liable to plaintiff Jones under § 1983. The magistrate found that: (1) "The unit's security procedures were reasonably necessary to insure the safety of the inmates, staff, and the institution in general"; (2) "None of the defendants, individually or collectively, were deliberately indifferent to plaintiff's needs...."; (3) "None of the defendants, individually or

---

3. Section 1915(d) states:
   "The court ... may dismiss the case if ... satisfied that the action is frivolous or malicious."
   The district court determined that the complaint was frivolous as to those four defendants, and Jones does not appeal the dismissal of these defendants. At the same time the district court granted Jones' request to proceed *in forma pauperis* against Counselor Hamelman, Sergeant Hampton, and Officers Likens and Swain.

4. The *pro se* complaint fails to allege any pattern of violence at the institution putting either

the defendants or prison authorities on notice of danger greater than normally associated with this type of institution. *Compare* the complaint in *Walsh v. Mellas,* 837 F.2d 789, 801 (7th Cir. 1988) *with* the *pro se* complaint in this case. Not only does the *pro se* complaint fail to allege a pattern of violence, its allegations are specifically limited to the events immediately preceding the assault, even though it alleged that prison officials ignored Jones' request to talk to them while Jones was in the hospital.

collectively, acted in reckless disregard for plaintiff's physical safety"; and, (4) "The defendants Swain and Hampton acted in a reasonable and prudent manner to the sudden and apparently unprovoked attack upon plaintiff and that such action was in conformance with the then existing institutional procedures." Furthermore, the magistrate specifically found that Jones' assertion that he informed the defendants in writing of the threats on his life was "not credible and [was] not supported by other credible evidence or documents."

On appeal Jones argues: (1) the magistrate erred in denying Jones leave to amend his complaint; (2) the magistrate erred in refusing to allow the testimony of a witness to show the *modus operandi* of defendant Swain to aid and abet criminal acts; (3) the magistrate erred in denying Jones leave to present the testimony of a fellow inmate as an expert witness; (4) Jones was denied the right of access to the courts and counsel; and (5) the magistrate ignored evidence adduced at trial and, consequently, the magistrate's decision was clearly erroneous.

## II. THE AMENDED COMPLAINT

■ Jones contends the magistrate erred in denying his motion for leave to amend his complaint arguing that "the proposed amended complaint merely pled the occurrence with greater specificity and [attempted] to add additional defendants who were also directly responsible for the occurrence."[5] We note that the grant or denial of a motion to amend a complaint is committed to the sound discretion of the trial court. Thus, we will overturn the magistrate's denial of Jones' motion to amend only if there has been an abuse of discretion. *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir.1987). Fed.R.Civ.P. 15(a) states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has

explained the meaning of "freely given" as used in Rule 15(a) by stating:

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.*— the leave sought should, as the rules require, be 'freely given'."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (emphasis added). Here, the magistrate denied Jones' motion for leave to amend the complaint because Jones was "belatedly ... [attempting] to enlarge the issues herein." We agree with the finding of the magistrate since Jones attempted to include in his proposed amended complaint additional issues concerning prison records, prison administration and policy, and the processing and assignment of inmates. The *pro se* complaint merely contained allegations that the defendants had received notes and verbal pleas that Jones' life was in danger, and that they had reacted improperly to the assault when it commenced. It should also be pointed out that Jones did not attempt to amend his complaint until twenty-nine months after the filing of the *pro se* complaint—less than three months before trial was scheduled to commence, after cross-motions for summary judgment had been filed, and after the pre-trial conference had taken place. We are cognizant of the unique difficulties encountered by *pro se* inmate litigants and are well aware of a court's obligation to liberally construe *pro se* complaints. *See Sizemore v. Williford*, 829 F.2d 608, 609–10 (7th Cir.1987). However, because of Jones' extreme tardiness in attempting to amend the complaint, the prejudice to defendants clearly outweighed the general policy behind Rule 15. Thus, we hold that the magistrate did not abuse his discretion in finding that the litigation

**5.** The proposed amended complaint did not name the four defendants remaining from the original *pro se* complaint. However, Jones apparently intended this as a supplemental complaint under Fed.R.Civ.P. 15(d) (supplemental pleadings), which would retain the original defendants and add the new defendants rather than an amended complaint under Rule 15(a) (amendments).

had progressed too far to enlarge the issues and that the interests of justice would be best served by denying Jones leave to file the amended complaint.

## III. MODUS OPERANDI EVIDENCE

■ Jones also argues that the magistrate erred "in refusing to allow the testimony of another inmate to show the *modus operandi* of defendant Swain to aid and abet criminal acts." Jones carries a heavy burden on appeal because an evidentiary ruling will be reversed only if the trial court committed *"a clear abuse of discretion." Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981) quoted in *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 929 (7th Cir.1984) (emphasis added).

For some unknown reason plaintiff Jones attempted to call inmate Robert Lyons as a witness despite the fact that Lyons was not even in or near the Reformatory at the time Jones was attacked and thus had no personal knowledge of the assault. Jones argues, somehow, that Lyons' testimony was allowable because it would have shown a pattern of "callous indifference" toward the protection of inmates by Officer Swain; that this pattern of indifference can be classified as a character trait; and that evidence of Swain's character was admissible to show a *modus operandi.*

Evidence of a person's character is generally not admissible under Rule 404(a).[6] Jones argues Lyons' testimony is allowable as an exception to the general rule under Fed.R.Evid. 404(b), because it is probative "of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or action." We are unable to ascertain from the briefs or the record exactly what exception Jones is arguing. While we may speculate that Jones argues Lyons' testimony allegedly serves to establish the "absence of mistake" exception of Rule 404(b), we refuse to partake in such speculation absent its clear articulation either here or at the trial level.

Even if the *modus operandi* testimony would have been admissible under Rule 404(b),[7] we need not be long detained in deciding this issue because evidence is properly excludible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues ... or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Had the magistrate admitted the inmate's testimony concerning Swain's asserted indifference into evidence, he would have had to allow Swain to cross examine Lyons and call witnesses on his own behalf to refute Lyons' testimony. In effect the admission of Lyons' testimony may have very well necessitated a "trial within a trial" concerning Swain's alleged actions *subsequent* to, and independent of, the assault at issue in this case and this "trial within a trial" would have consumed a great deal of trial time and would have had slight probative value.

Our review of the record convinces us that the magistrate did not abuse his discretion in excluding inmate Lyons as a witness. Specifically, Lyons had no personal knowledge of the events at issue. Further, Jones failed to set forth a convincing argument that Lyons' testimony was an exception to Rule 404(a). Indeed, the probative value of his testimony was clearly outweighed by confusion of the issues and waste of time. In short, we agree with the magistrate that Lyons' testimony was properly excluded and thus, we refuse to disturb that ruling on appeal.

## IV. EXPERT TESTIMONY

■ Jones also challenges the magistrate's refusal to qualify inmate James Hendrix as an expert witness. Testimony by experts is governed by Fed.R.Evid. 702, which states:

---

**6.** Fed.R.Evid. 404(a) states:
"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion ..."

**7.** We emphasize the record falls far short of supporting Jones' position that it should have been admitted.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The trial judge "has wide discretion in determining the competency of a witness to testify as an expert," *Smith v. Uniroyal, Inc.,* 420 F.2d 438, 440 (7th Cir.1970), and we apply the abuse of discretion standard to the trial judge's ruling. *Kelsay v. Consolidated Rail Corp.,* 749 F.2d 437, 448 (7th Cir.1984). There was no proper offer of proof at trial stating the specific purposes for which Hendrix was called to testify. We have stated that an effective offer of proof:

> " 'enables a trial judge to determine whether the evidence would be available for any purpose, and ensures that the record will be sufficiently detailed to permit appraisal by an appellate court of the scope and effect of the ruling, so that it can determine whether the trial court committed reversible error in excluding the evidence.' "

*United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 647 (7th Cir.1982) (quoting Weinstein's Evidence ¶ 103[03] at 103–27 (1977)) quoted in *Burrus v. Young,* 808 F.2d 578, 589 (7th Cir.1986) (Coffey, J., concurring) (criminal appeal interpreting the Wisconsin Rules of Evidence). At trial Jones attempted to qualify Hendrix broadly as an "expert witness on administrative procedure within the prison and a special knowledge of the inner workings of disciplinary units throughout the Indiana State Prison Unit." On brief Jones further contends that Hendrix's testimony was necessary "to show the operation of unsanctioned communications within the Indiana Penal System ...."; that Hendrix "was particularly experienced to assist the District Court in understanding the mechanisms whereby inmates organized into gangs ..."; and, that Hendrix's testimony would help the magistrate "to understand why a 'contract' was on Jones' life...."

Quite frankly, from our review of the record we are at a loss to understand how Hendrix's testimony would have assisted the magistrate in determining any fact in issue. We are convinced that there is sufficient direct evidence in the record for the magistrate to determine each and every issue of fact, including the "unsanctioned" passing of notes and letters among inmates, the existence of a prison gang, and the circumstances surrounding the threat on Jones' life. We conclude that the magistrate would have been well within his discretion to determine that Hendrix's expert testimony would not aid him in resolving the issues presented in this case. *See Spesco v. General Electric Co.,* 719 F.2d 233, 238 (7th Cir.1983).

We thus affirm the magistrate's ruling that Hendrix was not qualified as an expert. The magistrate specifically stated that Hendrix suffered from a lack of specialized "knowledge, skill, experience, training or education" of the internal workings of the disciplinary units in the prisons and we affirm the ruling on that basis. Although Hendrix was involved with various prison committees and organizations,[8] there was no direct evidence that Hendrix has done extensive reading, research or study, that he published articles, that he has anything but minimal testimonial experience in other trials, that he is a member of any criminology or penal professional societies or that he holds any certificates evidencing special expertise in this area. Finally, it was acknowledged he has no academic degree. Additionally, there was no offer of proof in the record establishing that he has experience or knowledge of the workings of prison disciplinary units, prison gangs or communications within the

---

**8.** Hendrix was president of Lifers' United for Penal Progress, an organization that designed programs geared to identify and monitor offender behavior. It was also involved with legislation governing offenders' rights and duties. Hendrix was also a member of the Offender Staff Ad Hoc Committee at the State Reformatory which studies "pretty much every aspect of the operation of this [the Reformatory] facility;" the orientation committee; and the legal service committee.

Indiana Penal System. Given Hendrix's total time of incarceration we do not doubt that he has accumulated a vast reservoir of general knowledge concerning prisons, but this alone falls far short of qualifying him as an expert on disciplinary units, prison gangs and prison communications. Simply, the offer of proof included no evidence which would establish that Hendrix was significantly more qualified than other inmates or correctional officers to testify as an expert on these matters. *See Burrus v. Young*, 808 F.2d at 583. Thus, it was not an abuse of discretion for the magistrate to determine that Jones failed to qualify Hendrix as an "expert."

## V. ACCESS TO THE COURTS AND COUNSEL

Jones next argues that he was denied the right of access to the courts and counsel for three reasons: (1) the magistrate abused his discretion in denying Jones' motion for a writ of habeas corpus *ad testificandum* requesting that his release from prison be ordered so that he could be brought to Indianapolis for the part of the trial convened there; (2) the Superintend-

ent of the Reformatory violated his constitutional right to adequate access to counsel by imposing a new policy regulating and restricting attorney visits;[9] and (3) Officer Likens harassed him during the trial. The second and third reasons offered by Jones are not properly before this court because they were not presented at trial.[10] Consequently, there is no evidence before this court on which we could base a decision and no final lower court decision from which to appeal.[11] Moreover, the defendants have had *no* opportunity to present their version of the new facts alleged by Jones, and, therefore, injustice would be as likely caused as avoided if we attempted to resolve these issues. We thus refuse to decide the issues concerning the prison visitation policy and the alleged harassment.

■ Jones also argues, however, that it was an abuse of discretion for the magistrate to deny his motion for a writ of habeas corpus *ad testificandum* requesting his release from prison such that he could be present during the entire trial. This circuit has long recognized that a prisoner lawfully committed has no constitutional right to be produced [even] *as a*

---

9. Even on appeal Jones does not allege how the new visitation policy impaired Jones' access to counsel, how the new policy differed from the old policy, if the total number of hours of access were reduced, and if so, by how many hours a week. The appendix to Jones' brief contains the memorandum from the Reformatory Superintendent. Without the specific allegations of fact to the contrary it does not seem to unduly interfere with access:

"Attorney/client interviews shall take place during normal institutional visiting hours (7:30 A.M. to 2:40 P.M.). Any other time for attorney/client interviews must be pre-approved and pre-arranged primarily through the office of the Release Coordinator."

Moreover, we note that Jones' counsel's "request" seeking extended hours (dated over 40 days after the date of the Superintendent's memorandum) broadly requests "I would ask that I be permitted approval for visitation during normal departmental working hours, and at other reasonable times" and seeks neither inmate nor time-specific visitation. Without further facts, attempting to raise this issue on appeal borders on the frivolous.

10. Jones contends that had the magistrate granted his motion for a writ of habeas corpus *ad testificandum*, he would have been able to in-

form his attorney that he had been harassed by Officer Likens, and his attorney would have then brought the matter to the magistrate's attention. We need not address this speculative argument because of our holding, *infra*, that the magistrate did not abuse his discretion in denying Jones' motion for a writ of habeas corpus *ad testificandum*.

11. Jones filed a request for review of the magistrate's decision with the district court judge but the district judge declined review because of lack of appellate jurisdiction stating:

"Plaintiff's counsel, in an over abundance of caution or with a lack of understanding of applicable law, has attempted to exercise his right of review in three different directions: (1) a notice of appeal, (2) objections directed to the District Court, and (3) a request for a certificate of probable cause. This Court believes that judicial efficiency, as well as the statutory and case law, require it to insist that plaintiff seek his relief in the Circuit Court of Appeals in accordance with 28 U.S.C. § 636(c)(3). *See Freeman v. Petsock*, 820 F.2d 628 (3d Cir.1987)."

This request for review, however, did not contain any of the new allegations Jones attempts to raise now.

*witness* in his own civil rights action." *Stone v. Morris,* 546 F.2d 730, 735 (7th Cir.1976) (emphasis added).[12] Nonetheless:

"[I]t is within the discretion of the court to determine whether a prison inmate shall attend court proceedings held in connection with an action initiated by the inmate. The discretion is not unfettered or unbridled, however.

The fact that there is no constitutional right to be present in a civil action does not sanction the summary exclusion of a plaintiff-prisoner from the trial of his prison-connected civil rights claim. Rather the trial judge must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner."

*Id.* (citations omitted). We also stated that "[t]hese same factors are to be considered by the trial court in *exercising its discretion* to determine whether a plaintiff-prisoner in a civil rights suit shall be permitted to attend a trial of his claim." *Id.* (emphasis added).

■ Although the magistrate denied Jones' motion for a writ of habeas corpus *ad testificandum* by simply writing "Denied" thereon without any recitation for the reasons of his denial, we do not hold that the magistrate abused his discretion in denying the motion.[13] It would have been helpful if the magistrate had documented the rationale for his denial of the motion

and trial courts would be well advised to set forth their reasoning in future cases. Nonetheless, the magistrate's failure to set forth his rationale in this case does not rise to the level of reversible error because: (1) the magistrate was fully advised of the legal parameters of his decision having the benefit of Jones' memorandum in support of the motion; (2) Jones was allowed to testify at trial about his version of the events leading to his stabbing and was present during the presentation of inmate testimony on his behalf;[14] (3) Jones was represented by a counsel of his own choosing during the entire proceeding including the defendants' case-in-chief; and (4) Swain, Hampton, Hamelman and Likens were all deposed prior to trial giving Jones an ample opportunity to discover and have knowledge of what the testimony of the defendants was to be and to prepare for cross examination of the witnesses at trial.[15]

As we pointed out earlier there is no constitutional right for an inmate-plaintiff to be present during a civil trial such as this case. Moreover, the circumstances of this case certainly fall far short of establishing that the magistrate abused his discretion in not ordering the inmate-plaintiff Jones' presence during the course of the entire trial. We affirm the magistrate's denial of Jones' motion for writ of habeas corpus *ad testificandum.*

---

**12.** "The absence of such a right is in sharp contrast to a defendant's constitutional prerogative of being present in person at each significant stage of a criminal felony prosecution." *Poole v. Lambert,* 819 F.2d 1025, 1028 n. 1 (11th Cir.1987).

**13.** We note that had the magistrate set forth his reasons for denying Jones' motion this issue probably would not be on appeal.

**14.** By conducting the plaintiff's case-in-chief at the Reformatory, the magistrate facilitated Jones' and his witnesses presence for a portion of the trial. This procedure makes it very clear that the magistrate tried to give Jones every reasonable opportunity to present his case. In his original brief to this Court, Jones stated that the reason the motion was partially denied was because of security concerns and we note that Jones' prison behavior had not been exemplary.

For example, the Conduct Adjustment Board found he participated in a riot at the Westville institution. We are confident based on our review of the record, that the magistrate gave Jones the most reasonable opportunity under the circumstances to present his case to the court.

**15.** One of the factors for the district judge to consider in these cases is whether pre-trial discovery depositions were taken. In *Stone v. Morris,* 546 F.2d 730, 734 (7th Cir.1976), we stated:

"[S]ince no pretrial discovery depositions were taken of the defendants by plaintiff's counsel, and since the plaintiff was not permitted to attend the trial, plaintiff was denied the opportunity to test the credibility of the defendants' testimony given to the jury, and to that extent he was precluded from aiding and assisting his counsel in confronting their testimony."

## VI. SUFFICIENCY OF THE EVIDENCE

■ Jones' final contention is that the magistrate ignored the evidence adduced at trial and, thus, his decision was clearly erroneous and contrary to the great weight of the evidence.

"It is well established that '[a] section 1983 action is a tort damage action even though the duty of the defendant is alleged to have breached is created by the Constitution or federal law.' *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985). As in a common law tort action, the plaintiff in a civil rights tort action bears the burden of establishing that the defendant owed the plaintiff a duty, that the defendant breached his duties to the plaintiff, and that his breach caused the plaintiff actual damages."

*Garza v. Henderson*, 779 F.2d 390, 395 (7th Cir.1985). Moreover, the level of culpability required for a finding of liability in a § 1983 action is higher than mere negligence. *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (no procedure for compensation is constitutionally required for mere negligence of official under the Due Process Clause of the Fourteenth Amendment); *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir.1988) (deliberate indifference or reckless disregard required under the Eighth Amendment). We apply the clearly erroneous standard when reviewing the factual determinations of the trial court.

"If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."

*Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985) (citations omitted). Further, Jones' case rests primarily on testimonial evidence, thus requiring the magistrate to make determinations of credibility.

"When findings are based on determinations regarding the credibility of witnesses, [Fed.R.Civ.P.] 52(a) demands even greater deference to the trial court's findings for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."

*Id.* at 575, 105 S.Ct. at 1512.

■ Jones' version of the events leading to his attack presents an oft repeated story of day-to-day prison life. From our review of the record we are convinced that the magistrate's determination that Jones failed to establish facts sufficient to meet the § 1983 standard is not clearly erroneous. Based on the trial record, the magistrate properly chose to accept the defendants' consistent pattern of clear testimony rather than the inconsistent testimony of Jones and his witnesses. This inconsistency was exemplified by Jones' testimony concerning the reason there was a contract on his life. Jones testified that there was a time when he feared for his life because Cole was angry about a shoe deal on which Jones had reneged. However, shortly after the "shoe" testimony, Jones undermined that fear by testifying that the shoe incident really wasn't "that big a deal." At another point in his testimony he said he was attacked because he was known to the prison population as an informant because he had informed on drug trafficking and use among the prison population at the Michigan City institution. Based on this inconsistent testimony, we agree with the magistrate's statement that it indeed remains a "mystery" exactly why there was a contract on Jones' life.

Jones testified that he wrote numerous notes and letters to the defendants requesting that he not be released from his cell for recreation. However, even Jones' own witnesses who he said had personal knowledge of the letters contradicted his testimony concerning the notes and letters. The defendants, on the other hand, clearly and consistently testified that, as the magistrate determined, they did not receive any form of verbal or written communication

from plaintiff that he desired to be separated from any of the inmates or that he was in fear for his personal safety or imminent attack.

Our review of the record supports the magistrate's determination that Jones failed to establish that any of these defendants breached any prison rules or regulations then in existence by reacting improperly to the attack; by not reviewing the prisoners' files; or that they knew, or should have known, of Jones' danger. More importantly, however, the record fails to substantiate Jones' contention that these defendants even had access to prison files. Thus, Jones failed to establish that these defendants were deliberately indifferent or acted in reckless disregard of Jones' physical safety. It is clear that the magistrate did not commit error and we affirm his factual determinations.

## VII. CONSIDERATIONS OF SANCTIONS

The procedural history of this case is replete with a lack of respect for procedural rules and ambiguous and imprecise argument. This history culminated in neither party complying with the briefing schedule we established by oral *and* written order the day of oral argument. Consequently, we consider sanctions against counsel for either or both parties.

At oral argument, we ordered the State of Indiana to file a transcript of the trial "within ten days if the transcript already has been typed, or thirty days if the transcript requires "typing" and ordered the following briefing schedule:

> "The appellant has 30 days from such filing [of the transcript] to file a brief relying on the transcript; the State has 15 days to answer; and the appellant has ten days in which to reply."

On June 9, 1988, upon request from the State of Indiana, we enlarged the time for

filing the transcript to July 11, 1988, but the original briefing schedule was not modified.[16] The due date of the transcript came and went without further explanation by the State. The transcript was finally filed on July 28, 1988. Jones filed his brief on August 24; the defendants filed their brief on September 27 (nineteen days late); and Jones filed his reply brief on October 28, 1988 (twenty-one days late). Nonetheless, in the interest of justice we accepted the briefs with the admonition that we would consider sanctions.

The noncompliance with this Court's briefing schedule is a serious matter. Beyond that, however, we are compelled to comment on the lack of procedural diligence and knowing respect for procedural rules exhibited by Jones' counsel and, more generally, the manner in which both counsel conducted this litigation. We do not feel it is unreasonable to expect carefully drafted briefs clearly articulating the issues and the precise citation of relevant authority for the points in issue from professionals trained and educated in the law. Unfortunately, the briefs in this case were drafted in an unprofessional manner. In these respects this case is an example of litigation run amuck, thus requiring an inordinate amount of time to be expended by this Court in its adjudication of the case. In the end it is society that loses because other litigants have had to wait for decisions which they timely deserve. We sternly admonish counsel and call their attention to Fed.R.App.P. 46(c), which broadly provides:

> "A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to

---

**16.** On April 18, 1988, the State filed a petition for rehearing (suggesting rehearing en banc) questioning our authority to order it to produce a transcript in this civil case. This Court denied the petition and suggestion for rehearing on May 23, 1988. There *may*, indeed, have been alternative methods to get a printed transcript instead of ordering the State to produce it. *See* 28 U.S.C. § 1915(b). However, no alternatives were offered by counsel for either side at oral argument and we were led to believe by the State's counsel that the State would voluntarily comply with this Court's order.

comply with these rules or any rule of the court."

However, due to the peculiar facts and circumstances surrounding the resolution of Jones' claims in this matter, we have decided not to impose sanctions. The magistrate's judgment is

AFFIRMED.