968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sherman GIBSON, Plaintiff/Appellant,
v.
Robert GAITHER, Stewart Inman and David Stalter, Defendants/Appellees.
 No. 90-1919.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 15, 1992.*
Decided July 16, 1992.
 
 Before BAUER, Chief Judge, and FLAUM, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Sherman Gibson, a death row inmate at the Pontiac Correctional Center, brought suit in the district court pursuant to 42 U.S.C. § 1983 against defendants Robert Gaither, Stewart Inman, and David Stalter, all correctional officers, alleging that they violated his rights under the Eighth and Fourteenth Amendments by using excessive force against him. Mr. Gibson's excessive force claim was tried before a jury, which found in favor of the defendants. Mr. Gibson appeals the jury's verdict. We affirm.
 
 
 2
 Initially, Mr. Gibson attacks two of the district court's pre-trial rulings. He asserts that the district court abused its discretion when it vacated the entry of default against defendant Mr. Stalter. We disagree. In determining whether the default should be vacated under Fed.R.Civ.P. 55(c), the district court considers whether the party against whom a default was entered has shown "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." United States v. DiMucci, 879 F.2d 1488, 1495 (7th Cir.1989).
 
 
 3
 The docket sheet indicates that Mr. Stalter was served on January 11, 1988. The district court entered the default against Mr. Stalter in June, 1988. However, in Mr. Stalter's affidavit, attached to his motion to set aside the default judgment, he states that he did not receive a copy of the summons until June 12, 1989. The day after he received a copy of the summons, he sought representation by the Indiana Attorney General and on July 10, 1989 filed a motion to vacate the default judgment. Based on this information, the district court found that Mr. Stalter's failure to respond to the summons was inadvertent and he had acted rapidly to cure the default. Additionally, the district court held that Mr. Stalter had a meritorious defense to the charges against him. The district court did not abuse its discretion by vacating the default judgment against Mr. Stalter.
 
 
 4
 Next, Mr. Gibson argues that the district court abused its discretion when it refused to allow him to appear personally at the jury trial of his civil rights claim. The district court initially ordered a writ of habeas corpus ad testificandum. However, on February 28, 1990, the court recalled the writ and ordered that Mr. Gibson's testimony be taken by a videotaped deposition, which would be presented to the jury during the plaintiff's case.
 
 
 5
 It is well settled " 'that a prisoner lawfully committed has no constitutional right to be produced [even] as a witness in his own civil rights action.' " Jones v. Hamelman, 869 F.2d 1023, 1029-30 (7th Cir.1989) ( quoting Stone v. Morris, 546 F.2d 730, 735 (7th Cir.1976)). Thus, it is within the district court's discretion to allow an inmate to present his testimony in person at his own civil trial. Jones, 869 F.2d at 1030. Of course, this discretion is not absolute. Rather the court must balance the plaintiff's interest in personally presenting his testimony against the state's interest in keeping the plaintiff-prisoner incarcerated. Stone, 546 F.2d at 735.
 
 
 6
 Prior to trial, the district court, upon its own motion, called David Sroka, a deputy United States Marshal in charge of transportation of death row inmates, as a witness in order to aid him in determining whether Mr. Gibson should be allowed to personally testify at his trial. After hearing Sroka's testimony, the district court held that the state's security interests outweighed Mr. Gibson's interest in testifying in person. It considered the factors set forth in Stone, 546 F.2d at 735-36, and reasoned that transporting a death row inmate "require[s] extraordinary security precautions," "exacts a high cost"[1] and "poses a security risk because unlike other prisoners, condemned prisoners have little to lose by attempting escape." The district court did not abuse its discretion in recalling the writ.
 
 
 7
 Mr. Gibson also argues that he is entitled to a new trial because he was denied effective assistance of counsel when his attorney failed to tender a negligence liability instruction to the court for submission to the jury. We reject this claim at the outset. The Sixth Amendment guarantee is not applicable to civil cases. Barkauskas v. Lane, 946 F.2d 1292, 1294 (7th Cir.1991); Wolfolk v. Rivera, 729 F.2d 1114, 1119 (7th Cir.1984). "It of course follows there is no constitutional or statutory right to effective assistance of counsel in a civil case.' " Wolfolk, 729 F.2d at 1120 (citation omitted). Even if the amendment were applicable, counsel's failure to tender a negligence instruction in an excessive force case does not amount to ineffective assistance of counsel. Proof that the prison officials acted negligently does not meet the plaintiff's burden of proof under the Eighth Amendment. Rather, "the core judicial inquiry is ... whether force was applied maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).
 
 
 8
 Finally, Mr. Gibson argues that he is entitled to a new trial because the jury's verdict was not supported by the evidence. The incident in question occurred on April 24, 1986. Upon return to his cell from outdoor recreation, Mr. Gibson noticed that somebody had torn down his drapes and turned off his television. He complained to defendant Mr. Inman, who was transporting him from the recreation yard back to his cell. According to Mr. Gibson, Mr. Inman responded with statements calculated to provoke a fight. Mr. Gibson then demanded that he be allowed to speak with a supervisor and refused to allow Mr. Inman to remove his handcuffs until the supervisor appeared.[2] In the meantime, defendants Mr. Stalter and Mr. Gaither arrived at Mr. Gibson's cell. Mr. Gibson testified that Mr. Inman then made more threatening remarks. Finally, Mr. Gibson allowed Mr. Inman to remove the handcuffs and the three officers left his cell. Some time later, the defendants returned to Mr. Gibson's cell and told him to pack up his belongings because they were going to move him to a new cell.
 
 
 9
 The defendants handcuffed Mr. Gibson and escorted him to his new cell via a prison stairway. Mr. Gibson testified that while en route to his new cell, the defendants, without provocation, pushed him up against a steel wall, kicked him in the groin and hip, beat him about the head, punched him in the nose, and struck his lip. Mr. Gibson further testified that he made no threatening gestures before the beating occurred and that because he was handcuffed throughout the entire incident he could not resist the alleged beating. After the incident, Mr. Gibson was sent to the prison hospital for treatment. He received stitches in his lip. Several months later, Mr. Gibson underwent deviated septum surgery to alleviate a burning sensation in his nose and difficulty in breathing, both symptoms which occurred after the alleged beating.
 
 
 10
 At trial, the defendants told a different story. All three defendants testified that the altercation occurred after Mr. Gibson had broken free from one of his handcuffs. Mr. Inman testified that Mr. Gibson had slipped a cuff and stepped towards him. Mr. Stalter, who was walking behind Mr. Gibson, testified that after he noticed that Mr. Gibson had freed himself from one of the handcuffs, he pushed Mr. Gibson up against the wall in order to recuff him. Mr. Gibson, however, pushed himself off the wall, and a struggle between the two men ensued. The struggle continued for a few minutes and ended when Mr. Gibson fell face down on the floor with Mr. Stalter lying on top of him. Once Mr. Gibson was restrained, Mr. Inman and Mr. Gaither recuffed him and brought him to his new cell. All three defendants filed disciplinary reports against Mr. Gibson concerning the altercation.
 
 
 11
 In determining whether sufficient evidence supports the jury's verdict, we "will not reweigh or reevaluate the evidence--that task is left to the jury as factfinder." United States v. Timmerman, No. 91-1789, slip op. at 9 (7th Cir. April 6, 1992). Viewing the evidence in the light most favorable to the defendants, Bogan v. Stroud, 958 F.2d 180, 185 (7th Cir.1992), we conclude that it sufficiently supported the jury's verdict. The defendants consistently testified that they did not kick, beat, or punch Mr. Gibson. Rather, they attempted to restrain him only after he broke free from one of his handcuffs and struggled with Mr. Stalter. Additionally, Dr. Mueller, Pontiac's Medical Director, testified that Mr. Gibson's injuries could have resulted not only from a blows to the nose, but also from his falling and striking his nose on the ground. This is consistent with the defendants' testimony that during the struggle between Mr. Gibson and Mr. Stalter, Mr. Gibson fell face first on the concrete floor. The jury chose to reject Mr. Gibson's version of the facts, and we will not disturb this credibility determination absent exceptional circumstances, none of which are present here. United States v. Cardona Rivera, 904 F.2d 1149, 1152-53 (7th Cir.1990). See also United States v. Jones, 950 F.2d 1309, 1315 (7th Cir.1991) ("in a swearing contest, the jury's choice of whom to believe is conclusive on the appellate court unless the factfinder credits exceedingly improbable testimony).
 
 
 12
 For these reasons, we AFFIRM the jury's verdict.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Sroka testified that death row inmates are transported to the courthouse in five car convoy's requiring at least six security personnel and one United States Marshal
 
 
 [2]
 At the time of the incident, Mr. Gibson was housed in one of Pontiac's segregation units. At Pontiac, extra security precautions are taken when a segregated prisoner is transported to and from his cell. Before a segregated prisoner's cell door is opened, the prisoner must be handcuffed. When the prisoner returns to his cell, the cell door is locked and the prisoner is required to stand close to the cell bars to allow the guard to remove the handcuffs