9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Randolph J. GREENE, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-2697.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 30, 1993.*
Decided Oct. 14, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Randolph J. Greene, an inmate of the United States Penitentiary in Marion, Illinois, brought suit under the Federal Tort Claims Act, 28 U.S.C. Secs. 1346(b) and 2671-2680, claiming that on two occasions correctional officials were negligent in failing to prevent another inmate from injuring him. After a bench trial before a magistrate judge, final judgment was entered in favor of the United States on the grounds that Greene had failed to prove breach of duty or actual damages. Greene appeals, challenging the court's judgment and several of its evidentiary rulings. We affirm.
 
 I. FACTS
 
 2
 At the time of the first incident, Greene was an inmate of the I-Unit at Marion, a segregation unit for inmates with disciplinary problems. On November 3, 1986, another I-Unit inmate, Nelson Fernandez-Santana, was released from his cell for indoor recreation. He grabbed an ice bucket, filled it with hot water from the shower, and threw it on several inmates. The hot water struck Greene on the left arm and the left side of his face. A medical report made a short time after the incident shows that no treatment was necessary, since Greene had not suffered any burns or other injuries as a result of the attack.
 
 
 3
 The second incident occurred while Greene was an inmate of the E-Unit, to which inmates from the general prison population are assigned. On the morning of April 20, 1989, Greene requested and was granted permission to go to the unit law library. The law library is housed in a converted cell, and its door is generally kept locked for security purposes. While Greene was in the law library, another inmate, Alex Patrick McCoy, asked a correctional officer to open the door, claiming that Greene needed a new typewriter because the one he had been using was broken. The correctional officer, James Schroeder, testified that he confirmed McCoy's story with Greene before directing another officer to open the door to the law library. As soon as the door was opened, McCoy ran in and began fighting with Greene. Emergency security was called, and both inmates were removed from the law library. Greene's medical report, made immediately after the attack, shows that he told a physician's assistant that a superficial abrasion on his nose was sustained during a basketball game, and was not the result of the fight. No other injuries were observed, and Greene did not need any treatment for the abrasion.
 
 II. ANALYSIS
 
 4
 A. The challenged evidentiary rulings.
 
 
 5
 Greene objects to the introduction of Defendant's Exhibits 1, 3 and 4, consisting of Greene's medical care form, injury report, and a page from a unit log, on the grounds that the evidence was cumulative, and that its probative value was outweighed by the danger of unfair prejudice. Fed.R.Evid. 403, 611. Greene also claims that the documents were prepared in anticipation of litigation. Citing Fed.R.Evid. 609(a)(2), Greene further objects to the government's use of prior felony convictions to impeach his own testimony and that of Alex McCoy. Finally, Greene contends that the magistrate judge's decision not to allow Fernandez-Santana or Joseph Sullivan to testify was an abuse of discretion.
 
 
 6
 Greene carries a heavy burden on appeal. We give broad discretion to a trial court's evidentiary rulings, and will not reverse absent a clear showing that the court abused its discretion in either admitting or excluding evidence. See Gora v. Costa, 971 F.2d 1325, 1329 (7th Cir.1992); M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1408 (7th Cir.1991); Geitz v. Lindsey, 893 F.2d 148, 150 (7th Cir.1990); Jones v. Hamelman, 869 F.2d 1023, 1027 (7th Cir.1989).
 
 
 7
 The record reveals that Greene's objections to the introduction of Defendant's Exhibits 1, 3 and 4 are unfounded. Exhibit 1, Greene's chronological medical care form, describing the medical care Greene received after Fernandez-Santana threw hot water on him on November 3, 1986, was properly authenticated by Kip G. Dillow, a physician's assistant at Marion. Dillow testified that he completed the form at or near the time Greene was examined, in the course of a regularly conducted activity and according to the regular practice of the medical department at Marion. (Tr. at 57-58). See Fed.R.Evid. 803(6); Wheeler v. Sims, 951 F.2d 796, 802 (7th Cir.), cert. denied, 113 S.Ct. 320 (1992). Exhibit 3, Greene's inmate injury report pertaining to the April 20, 1989 altercation, was properly authenticated by Michael Coogan, also a physician's assistant at Marion. (Tr. at 85-88). Exhibit 4, a page from the I-Unit log, providing a record of the November 3, 1986 incident, was admitted to show that correctional officials had followed standard practice in supervising Fernandez-Santana and in terminating his recreation period after he threw hot water on Greene. It, too, was properly admitted into evidence under Rule 803(6). (Tr. at 45-49, Test. of correctional officer Michael Stephen Jeffries). Contrary to Greene's assertions, these exhibits were neither cumulative nor unfairly prejudicial, and the testimony offered to authenticate them clearly shows that they were not prepared in anticipation of litigation.
 
 
 8
 Greene's objection to the use of prior felony convictions for purposes of impeachment is easily disposed of. Fed.R.Evid. 609(a)(1) allows a trial court to admit evidence of prior felony convictions for crimes punishable by imprisonment in excess of one year for the purpose of impeachment of witness credibility, even if the crime did not involve dishonesty. Because the evidence of Greene's and McCoy's criminal past was limited to eliciting the crimes charged, the date of conviction and the period of incarceration, and was not used to create unfair prejudice, its admission into evidence was proper. See Geitz, 893 F.2d at 150-51.
 
 
 9
 Greene also maintains that the magistrate judge abused his discretion in denying Greene's motion for a writ of habeas corpus ad testificandum to produce Sullivan and Fernandez-Santana as witnesses. At the final pretrial hearing, the magistrate judge determined that Sullivan had not personally witnessed either of the incidents in which Greene was assaulted, and that his testimony would therefore be inadmissible. (Pretrial Hr'g Tr. at 7-8). See Fed.R.Evid. 602; Davis v. City of Chicago, 841 F.2d 186, 189 (7th Cir.1988). The magistrate judge also determined that Fernandez-Santana's proposed testimony concerning his violent propensities would be cumulative, since Greene himself could present testimony concerning Fernandez-Santana's propensities. More importantly, the magistrate judge established that Fernandez-Santana's proposed testimony was not relevant to the ultimate issue of negligence, since it was unlikely to shed light on what correctional officials actually knew of his behavior problems prior to the assault on Greene. (Pretrial Hr'g Tr. at 10-12). The court also noted that Fernandez-Santana was no longer an inmate at Marion, having been transferred to the federal correctional institution in Talledega, Alabama. (Pretrial Hr'g Tr. at 6). Thus, even if we assume that some portion of Fernandez-Santana's proposed testimony might have been admissible, the inconvenience of producing Fernandez-Santana as a witness outweighed any possible benefit to Greene in obtaining his testimony. See Hamelman, 869 F.2d at 1030; Stone v. Morris, 546 F.2d 730, 735 (7th Cir.1976). Greene's contention that the magistrate judge abused his discretion in denying the writ is therefore without merit.
 
 
 10
 B. Greene's negligence claims.
 
 
 11
 The Federal Tort Claims Act ("FTCA," or "Act"), 28 U.S.C. Secs. 1346(b), 2671-2680, provides in part: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. Sec. 2674. Since a claim brought under the FTCA is governed by "the law of the place where the act or omission occurred," 28 U.S.C. Sec. 1346(b), this negligence claim is controlled by the substantive law of Illinois. See, e.g., Campbell v. United States, 904 F.2d 1188, 1191 (7th Cir.1990). Furthermore, the duty of care owed to federal prisoners is established by federal statute, 18 U.S.C. Sec. 4042, independent of any inconsistent state rule governing the duty of care owed by state correctional officials to state prisoners.[1] United States v. Muniz, 374 U.S. 150, 164-65 (1963).
 
 
 12
 Under Illinois law, to recover in negligence "the plaintiff must set out sufficient facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach." Vesey v. Chicago Housing Authority, 145 Ill.2d 404, 411, 583 N.E.2d 538, 541 (1991); see Ward v. K Mart Corp., 136 Ill.2d 132, 140, 554 N.E.2d 223, 226 (1990). Courts have held that under 18 U.S.C. Sec. 4042, federal prison officials have a duty to exercise "ordinary diligence to keep prisoners safe and free from harm." Cowart v. United States, 617 F.2d 112, 116 (5th Cir.) (quoting Jones v. United States, 534 F.2d 53, 54 (5th Cir.), cert. denied, 429 U.S. 978 (1976)), cert. denied, 449 U.S. 903 (1980). Under this standard, the government is not an insurer of a prisoner's safety. See id. Correctional officials are thus expected to use ordinary care to protect prisoners from unreasonable risks, not to provide them with a risk-free environment.[2] See id.; Fleishour v. United States, 365 F.2d 126, 128-29 (7th Cir.), cert. denied, 385 U.S. 987 (1966); see also Flechsig v. United States, 786 F.Supp. 646, 650 (E.D.Ky.1991), aff'd, 991 F.2d 300 (6th Cir.1993); Turner v. Miller, 679 F.Supp. 441, 443 (M.D.Pa.1987); Artis v. Petrovsky, 638 F.Supp. 51, 53 (W.D.Mo.1986). Moreover, in cases where one inmate is assaulted by another, a breach of the duty of ordinary care usually requires a showing that correctional officials knew of a potential problem between the two inmates prior to the assault.[3] See Jones, 534 F.2d at 54; see also Turner, 679 F.Supp. at 443-44; Artis, 638 F.Supp. at 53-54.
 
 
 13
 Greene's own testimony undermines his claims that correctional officials breached their duty of ordinary care in failing to prevent either of the two assaults. On cross-examination, Greene admitted that he had never had any difficulties with Fernandez-Santana, that he had never indicated to correctional officials that he feared Fernandez-Santana, and that he had never requested protective status within the prison or protection from any particular inmate. (Trial Tr. at 17-18, 24, 26). Greene likewise admitted that he had never informed correctional officials that he feared an attack by McCoy. (Trial Tr. at 27). Greene stated that he was surprised by both attacks, having had no particular reason to anticipate either of them. (Trial Tr. at 20, 24, 26-27). Greene failed to bring forward any evidence suggesting heightened tensions within the prison, or a pattern of behavior on the part of either Fernandez-Santana or McCoy that would indicate to prison officials that special vigilance was necessary to prevent the attacks that occurred.[4] The magistrate judge was therefore correct in concluding that Greene had failed to show that correctional officials breached their duty of ordinary care in connection with either of the assaults.[5] See Jones, 534 F.2d at 54; Turner, 679 F.Supp. at 443-44; Artis, 638 F.Supp. at 53-54.
 
 
 14
 Under Illinois law, where a plaintiff has failed to establish that the defendant was negligent, in that the defendant breached a duty he owed to that particular plaintiff, the issue of proof of damages does not arise. Cf. Fisher v. Patel, 93 Ill.App.3d 694, 697, 417 N.E.2d 691, 693 (Ill.App.Ct.1981) (after liability is established, actual damages must be proved); Jeffrey v. Chicago Transit Authority, 37 Ill.App.2d 327, 335-36, 185 N.E.2d 384, 388-89 (Ill.App.Ct.1962) (same). Accordingly, we will not address this issue except to note that the record fully supports the magistrate judge's determination that Greene did not suffer damages as a result of either the water-throwing incident or the altercation in the prison law library. (Exhs. 1 and 3; Trial Tr. at 60-61, 65, 87-90).
 
 CONCLUSION
 
 15
 For the reasons stated above, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Thus, contrary to Greene's assertions, the Restatement (Second) of Torts does not necessarily establish the duty of care owed by federal correctional officials to federal prisoners, notwithstanding any authority it may have before the Illinois courts concerning the duty of care owed by state correctional officials to state prison inmates
 
 
 [2]
 Doe v. United States, 838 F.2d 220 (7th Cir.1988), cited by Greene, is thus inapposite, since it concerns the duty of care owed by the government to children in a government-run day care center at a military base. See id. at 222-23
 
 
 [3]
 Specifically, to demonstrate that the government breached its duty of ordinary care, an inmate victim must show that prior to the assault, (1) he informed prison staff of a problem between himself and his assailant, (2) he requested protective status, (3) extraordinary incidents had occurred near the time of the assault, or (4) prison staff had observed group tension indicating danger to the security of the victim. See Artis, 638 F.Supp. at 53 (emphasis in original) (citation omitted)
 
 
 [4]
 Moreover, as far as the incident in the prison law library is concerned, the regulation cited by Greene governing the use and control of typewriters at Marion (Exh. A) has no bearing on his negligence claim because the harm that resulted from its alleged violation is not the kind of harm the regulation was designed to prevent. See, e.g., Flechsig, 991 F.2d at 304
 
 
 [5]
 We note that in Illinois, breach of duty is ordinarily a question of fact. See Gill v. Foster, 232 Ill.App.3d 768, 597 N.E.2d 776 (Ill.App.Ct.1992), appeal granted, 148 Ill.2d 641, 610 N.E.2d 1262 (1993); Moore v. Hill, 155 Ill.App.3d 1, 507 N.E.2d 1314 (Ill.App.Ct.1987). This court reviews a trial court's factual findings only for clear error. See Tyson v. Jones & Laughlin Steel Corp., 958 F.2d 756, 759 (7th Cir.1992); Hamelman, 869 F.2d at 1031. Where the magistrate judge's view of the evidence is plausible in light of the record as a whole, we may not reverse. Hamelman, 869 F.2d at 1031 (citing Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985))